## WALLACE v. STANDARD OIL CO.

### (Circuit Court, D. Indiana. March 6, 1895.)

#### No. 9,168.

1. NEGLIGENCE—DANGERS INCIDENT TO EMPLOYMENT.

One B., a boy of 17, was employed by the S. Co. in handling coal oil and other inflammable fluids in and about the premises of the S. Co. B. was ignorant and inexperienced, and unacquainted with the inflammable character of the oils he handled, and had been told by W., the agent of the S. Co. in charge of its premises, that there was no more danger in approaching a fire, when his clothes were saturated with such oils, than if they were wet with water. On a cold day, when B. had been handling oils out of doors, he was instructed by W. to go into the office, where there was a hot fire in a stove, to warm himself. The door of the office was fastened with a lock which was defective, and could sometimes not be opened from the inside, which fact was known to both B. and W., and W. had promised to repair the lock. B. went into the office, where his clothes caught fire from the stove, and, being unable to escape by the door, he leaped from a window, and, in consequence of the injuries sustained thereby, and of his burns, he died. *Held*, on demurrer to a complaint stating these facts, that the failure of the S. Co. and its agent, W., to instruct B. as to the dangers incident to his employment, in reference to the liability of his clothes to catch fire when saturated with oil, especially when instructing him to go to the stove to warm himself, was negligence rendering the S. Co. liable for damages.

2. SAME—PROXIMATE CAUSE.

*Held*, further, that the failure to repair the defective lock was not the proximate cause of the injury, and would not support an action.

This was an action by Hattie Wallace against the Standard Oil Company to recover damages for the death of her son, alleged to have been caused by defendant's negligence. Defendant demurs to the complaint.

Stansifer & Baker, for plaintiff.

Elmer E. Stevenson and Waltman & Brown, for defendant.

BAKER, District Judge. The complaint charges that the defendant was engaged at Columbus, Ind., in the business of handling,

transporting, and selling coal oil, turpentine, gasoline, and other inflammable oils, and occupied for that purpose a building of three rooms, two of which were above and one was below; that one of the upper rooms was 10 feet square, and was used as an office, and contained oil cans, small tanks, oily working clothes, a cot with rugs and quilts, an office desk and stove; that it had a window on the east side, and a door and a window on the north side; that the floor thereof was 10 feet above the ground on the east side, and 2 feet above the ground on the north side; that the door had a defective lock, and the north window was shut up and closed by a large and heavy office desk, which had been placed against it; that the plaintiff's son, George W. Barcus, aged 17 years, was employed by the defendant in handling the oils; that nearly all of such work was done on the outside of the building, and by him; that on the 30th day of March, 1894, which was a damp, cold, and chilly day, Barcus was so handling the oils under the direction of W. M. Wallace, who was the agent of the defendant in charge of its business at Columbus, Ind.; that the clothes of Barcus became saturated therewith, and, being cold and chilly, he was directed by Wallace to go into the office, and warm himself; that there was a hot fire in the office stove, which had been made by Wallace; that Barcus went into the office, and closed the door; that while in the office his clothing and other articles therein caught fire from the stove; that Barcus endeavored to escape through the door, but was unable to do so, on account of the defective lock, by means of which the door had become fastened and could not be opened from the inside; that he thereupon leaped through and from the east window to the ground below; that in doing so he was cut by the window glass, jarred and bruised, and that he died on the day following, as a result of his burned, bruised, and wounded condition. It is further averred that Barcus was ignorant and inexperienced, and wholly unacquainted with the inflammable character of the oils that he was engaged in handling for the defendant; that he had been told by Wallace that there was no more danger in going to the hot stove with his clothes saturated therewith than if his clothes were wet with water; that Barcus believed and relied on these statements; that the bad character of the lock was known to both Wallace and Barcus; that Wallace had promised Barcus to repair the same, and Barcus relied on the promise of Wallace to do so; and that Barcus was wholly without fault in the premises. The defendant demurs to the complaint because it does not state facts sufficient to constitute a cause of action against it.

The complaint is in a single paragraph, and charges negligence in failing to repair the defective lock, and also in failing to instruct the decedent in respect to the dangers incident to his employment. By reason of his youth and inexperience he is alleged to have been ignorant of the danger from fire by reason of his clothes becoming saturated with dangerous and inflammable oils and gases in the course of his service. The defective condition of the lock, and the failure to repair it, as promised, which caused the door to become fastened so that it could not be opened, were not the proximate

cause of the decedent's death. At most, it was a condition which gave opportunity for the fatal result which followed the accident. The condition of the decedent's clothes, which were saturated with dangerous and inflammable oils and gases, and his proximity to the overheated stove, were the immediate cause of his injury and death. So much of the complaint, therefore, as relates to the defective lock, and to the fastening of the door so that it could not be opened in consequence of it, does not state a separate cause of action. This part of the complaint would not support an action on the ground that the master had promised to repair the defective lock, and the servant had continued in the master's employ on the faith of such promise, because the injury complained of was not the result of such defect and breach of promise. The cases to which this rule applies are those in which the defective tools, machinery, and appliances which the master has promised to repair are the proximate cause of the injury, and are essential to the service which the servant was required and undertook to perform, and which were furnished to him for use in such employment. The utmost effect which can be attributed to this part of the complaint is to excuse the decedent from the charge of negligence in going into a room having a door liable to become fastened in consequence of the defective lock.

If the plaintiff has a cause of action, it is on account of the master exposing a young and inexperienced boy to the danger arising from the saturation of his clothes with dangerous and inflammable oils and gases in the course of his employment, and in failing to instruct him in regard to the hazards arising therefrom, and in assuring him that his clothes, when so saturated with such oils and gases, were no more liable to take fire than they would be if they were wet with water. It is the duty of the master to instruct an infant servant, who, by reason of his youth and inexperience, is ignorant of them, in regard to all the dangers incident to and growing out of the service in which he is employed. This duty is not discharged so as to exonerate the master from liability by mere general instructions, but they must be so full, plain, and specific as to bring to the knowledge and understanding of such infant the dangers incident to and growing out of his employment. This duty is the master's; and the agent, employé, or servant who may be delegated to perform it stands in the master's place, and his negligence is the master's negligence. In the performance of that duty, the servant, whatever his grade, is a vice principal, and speaks and acts for the master. The defendant owed the decedent the duty of instruction, so that he might fully understand and avoid the danger from fire arising from the nature of his employment, and, instead of performing that duty, he misled the decedent by the false assurance that there was no danger from fire. This was a plain breach of duty, and, if the injury complained of resulted from such breach of duty, the complaint must be held sufficient. If his clothes had taken fire from exposure to it while the decedent was actually engaged at work for the defendant, there could be no serious dispute concerning its liability under the circumstances. It is said that the accident was one which ought not to have been anticipated by the defendant, and

was not a probable result of the saturation of his clothes with oils and gases. It seems to me that this contention is unfounded. The danger of the ignition of clothes, when saturated with oils and gases as alleged, by exposure to fire, is obvious, and is one which the defendant was bound to take notice of. It is equally obvious that the decedent, in the cold days of winter and spring, would be likely to be about fires, and in dangerous proximity to them, while his clothes were impregnated with oils and gases, especially if he was told by his employer that there was no danger in so doing, and he believed what he was told. The decedent was guilty of no negligence in acting on the direction of the representative of the defendant in going dangerously near to the hot stove in question. He went where he had a lawful right to be. His danger in so acting arose from conditions incident to the service, which conditions continued to be present with him, and caused the burning of his clothes and subsequent death. This ignition of his clothes, and injury therefrom, were the direct result of the condition of his clothes incident to his employment. While the boy was sent to warm himself by his employer, he did not cease to be in its service, and he was, it seems to me, as much entitled, under the circumstances, to charge the defendant for its failure of duty to instruct, as though, at the time of the accident, he had been actually at work in the room. His clothes, saturated with the dangerous and inflammable substances mentioned, continued to be a source of danger, while unremoved, after, as well as during, his hours of actual service; and, in my opinion, it was actionable negligence to direct the decedent to go into the room containing the hot stove, even if the direction were only permissive, without instructing him in regard to the danger from a too near approach to it. The demurrer will be overruled.