MIKE BECK v. TEXAS COMPANY.

No. 2233.   Decided June 12, 1912.

**1.—Jurisdiction of Supreme Court—Sufficiency of Evidence.**

The Supreme Court has jurisdiction to determine whether there is any evidence to sustain a finding of fact by the Court of Civil Appeals, that being a question of law.   (P. 307.)

**2.—Same.**

The Supreme Court may look to the record for any facts not passed upon by the Court of Civil Appeals.   (Pp. 307, 308.)

**3.—Assumed Risk—Contributory Negligence.**

Where the accident causing injury to an employee is not solely due to defects in the machinery furnished by the master, but to operation in a manner improper in view of such defects, the issue is not one of assumed risk, but of contributory negligence.   (P. 308.)

**4.—Contributory Negligence—Defective Hand Car—Assurance of Safety.**

A servant unskilled in the use of a hand car was not, as matter of law, taxed with contributory negligence in using it when run at a rate of speed dangerous in view of defects therein which were known to him, where he relied, in so doing, on assurance from his foreman in charge of its operation that it was safe to do so.   (Pp. 308-311.)

**5.—Same.**

The danger from use of defective machinery must be so obvious and imminent that no ordinarily prudent person would undertake to perform the service, in order to tax with contributory negligence the servant using it in reliance on assurance from the master that he would be safe in so doing. The duty of the servant being obedience, the law looks with indulgence on his act in incurring risks at the master's command. (Pp. 309, 310.)

**6.—Same—Case Stated.**

An oil company was laying its pipe line along the right of way of a railway, using a hand car to transport sections of pipe to the points where they were to be laid. The wheels of the car were defective, rendering it dangerous to operate except at very slow speed. Plaintiff, a laborer, who knew of the defects, but was inexperienced in operation of hand cars, by direction of the foreman and on his assurance that it was safe, used the car, with the foreman and others, in returning from the point where they had distributed pipe, assisting in propelling it. Being run too fast in view of the defects, the foreman who directed its operation not interfering, the car was derailed and plaintiff injured. Held that the question of contributory negligence was one of fact for the jury. The appellate court, in reversing a recovery by plaintiff, was not authorized to render judgment for defendant on the ground that contributory negligence appeared as matter of law. (Pp. 305-311.)

**7.—Practice in Supreme Court—Reversal—Questions of Fact and Law.**

The findings of the Court of Civil Appeals on the sufficiency of evidence to sustain a recovery, being on questions of fact, are conclusive upon the Supreme Court. But where they do not find against the existence of any fact necessary to sustain a recovery, and their finding of fact—contributory negligence—defeating recovery is based on a conclusion that such defense is established as matter of law, and this conclusion is not authorized, the Supreme Court, on reversing, is not bound to treat this as it would a finding of fact, and may affirm the judgment of the trial court in plaintiff's favor. (P. 312.)

Error to the Court of Civil Appeals, Fourth District, in an appeal from Harris County.

Beck sued the Texas Company and had judgment. On defendant's appeal this was reversed and rendered in its favor. Appellee, plaintiff, then obtained writ of error.

*John Lovejoy* and *J. W. Parker,* for plaintiff in error.—The evidence did not conclusively show that appellee knew of the danger incident to using the car, under the circumstances he was doing when injured, and hence, the question whether he did was one for the jury, and the court correctly submitted it to the jury. Railway Co. v. Kelly, 98 Texas, 136-137; Railway Co. v. Lempe, 59 Texas, 23; Marshall v. Ry., 107 S. W., 884; Railway Co. v. Smith, 24 Texas Civ. App., 131.

*James L. Autry, Robert L. John* and *Hutcheson, Campbell & Hutcheson,* for defendant in error.—Where it appears from the evidence that, though the defendant was negligent, yet the plaintiff knew, or was legally chargeable with knowledge, of the negligent condition and the dangers resulting therefrom, plaintiff has failed in law to make a case of liability, as, by continuing in the employment with the knowledge of the defects and dangers, he assumes said risks as an incident to his employment. St. L., S. W. Ry. Co. v. Mathis, 101 Texas, 342; St. Louis, S. W. Ry. v. Hinson, 101 Texas, 543; Ely

v. S. A. & A. P. R. R. Co., 15 Texas Civ. App., 511; 1 Labatt, Mast. &
Serv., 639, 670, 717, 988, 1020, 1024; Railway Co. v. Bradford, 66
Texas, 732; Railway Co. v. Wood, 35 S. W., 879; Fort Worth &
N. G. Ry. Co. v. Robinson, 37 Texas Civ. App., 465; Fealy v. Pear-
son Cordage Co., 37 N. E., 368; Gilmartin v. Kilgore, 52 Texas Civ.
App., 177; F. W. Iron Works v. Stokes, 33 Texas Civ. App., 218;
T. & N. O. v. Conroy, 83 Texas, 214; T. & P. v. Bryant, 8 Texas Civ.
App., 134.

Notwithstanding the assurance of the master, the servant has no
right to rely thereon and to go into a place or undertake to perform
a service that he thinks is dangerous, and if he does so, he assumes
the risk of any danger resulting therefrom. Haywood v. G. H. &
S. A. Ry. Co., 28 Texas Civ. App., 101; Gilmartin v. Kilgore, 52
Texas Civ. App., 177; Fort Worth Iron Works v. Stokes, 33 Texas
Civ. App., 218.

Where there are two methods of performing the service, one safe
and the other hazardous, and the servant voluntarily seeks the haz-
ardous method, his voluntary action in that regard in law deprives
him of recovery. Railway Co. v. Mathis, 101 Texas, 342; Railway Co.
v. Hinson, 101 Texas, 543; I. & G. N. v. McCarty, 64 Texas, 632;
Crawford v. H. & T. C. R. R., 89 Texas, 89; 1 Labatt, Mas. & Serv.,
sec. 258.

That assumed risk and contributory negligence are separate
defenses, and have nothing to do with each other, and it is error to
confuse them: T. & P. Ry. Co. v. Bradford, 66 Texas, 732; Railroad
Co. v. Conroy, 83 Texas, 214; G. C. & S. F. Ry. Co. v. Schwabke, 1
Texas Civ. App., 573; T. & P. Ry. Co. v. French, 86 Texas, 99; M.
K. & T. Ry. Co. v. Wood, 35 S. W., 879; T. & P. Ry. Co. v. Bryant,
8 Texas Civ. App., 134; Ft. W. & R. G. Ry. Co. v. Robinson, 37 Texas
Civ. App., 465.

That the question of what a reasonably prudent person would do
is immaterial, where it appears that he knew of the dangers, although
he did not fully realize them: Labatt on Master and Servant, 670;
Ely v. S. A. & A. P., 15 Texas Civ. App., 511.

If assumed risk is not shown as a matter of law, still the Court of
Appeals has made affirmative finding upon ample evidence in the
record to support same, and this court, if it reverses the judgment
of that court, cannot affirm the judgment of the trial court, but
must reverse and remand the cause for trial anew: Poindexter v.
Receiver of Kirby Lumb. Co., 101 Texas, 325; Lee v. I. & G. N., 89
Texas, 589; Wallis v. Southern C. O. Co., 91 Texas, 531; Choate v.
Railway Co., 90 Texas, 81.

MR. JUSTICE DIBRELL delivered the opinion of the court.

As shown by the allegations of the third amended original petition
filed in the District Court of Harris County, on April 10, 1909, this
was a suit by plaintiff, Mike Beck, against the defendants, Texas
Company and the Trinity & Brazos Valley Railway Company, to
recover damages for personal injuries received by plaintiff while in
the service of the Texas Company. Said company was incorporated
for the purposes, among others, of buying, selling, storing and trans-

porting oil and gas, with the right to exercise the power of eminent domain and to lay pipe and pipe lines across and under any public road or railroad right of way and other property for carrying out such objects, and obtained consent to lay its pipe line upon the right of way of said railway company. Under an agreement with the railway company the pipe of the Texas Company, used in laying its pipe line, was transported upon the railway cars and left at convenient points along its road for unloading and distribution by a force of men in the employ of the Texas Company. The plaintiff was one of several men engaged in unloading pipe from the railroad cars and distributing same along the right of way for future use. In getting this force of men to and from the points where cars of pipe were in waiting it was necessary to transport them on a hand car run over the line of road of the railway company, and propelled by hand power. One J. M. Charlton was foreman of the force of men engaged in this work, and had authority to hire and discharge them and to superintend, control and command them in the work of unloading the pipe and of propelling the hand car to and from the work, and to direct each of such employes in the performance of his duty as such.

On December 17, 1907, plaintiff, with a number of other employes and the vice principal, Charlton, was engaged in unloading pipe from the railroad cars, and after the day's work was ended, which was at a point some twelve or fifteen miles from camp, got upon a hand car, as was the custom and duty of plaintiff together with the other members of the force to do, to return to camp for the night, and while thus returning the hand car, which was running at a rate of speed permitted by the foreman, was derailed, and plaintiff was thrown upon the ground and track with great force and received the injuries complained of. The hand car so furnished by the Texas Company for use by plaintiff and the other members of the force, was in an unsafe and defective condition for the use intended to be made of it by said defendant, in that two of its wheels were taken from a push car belonging to the Santa Fe Railway Company and were smaller than the other two wheels of the car, and were loose about the axle and the flanges were worn, broken and insufficient to hold and keep the wheels of the car on the rails while running at a reasonable rate of speed. Such defects and insufficiency of said wheels were known to the foreman and vice principal of the Texas Company. The foreman and the entire force of workmen were inexperienced in operating hand cars, which fact was known to said defendant. On account of the incompetency of the said foreman, he permitted the hand car to be propelled at an excessive and dangerous rate of speed, considering the defects and insufficiency of the car, or knowingly caused or permitted the car to be run at an excessive and dangerous rate of speed in view of the defects and insufficiency thereof. Plaintiff was commanded by the foreman with the others to use the car and he believed it to be reasonably safe.

The cause having been dismissed as to the railway company, it is not necessary to mention its pleadings. The Texas Company pleaded the general denial, contributory negligence and assumed risk.

The cause having gone to a jury against the Texas Company alone, a verdict was rendered against it in plaintiff's favor for $4,000.00. From this judgment a writ of error was sued out to the Court of Civil Appeals and the cause was by that court on the 23rd day of November, 1910, reversed and rendered for the defendant, Texas Company, and is in this court upon writ of error granted February 6, 1911. (Texas Company v. Beck, 133 S. W., 439.)

The Court of Civil Appeals, in reversing the judgment of the trial court and in rendering judgment against the plaintiff, makes the following findings of fact and none other, which we quote from the opinion: "The evidence shows conclusively that the plaintiff was injured while in the service of the defendant, Texas Company, by the derailment of the hand car which he, with other members of his gang, was propelling in the ordinary manner in which cars of that kind are propelled; that the car was of the character and possessed defects described in plaintiff's petition; that it was very hazardous, by reason of such defect, to run the car at a greater rate of speed than three miles an hour, and the danger of derailment increased in proportion to the increase of its speed; that the plaintiff well knew of the defects in the car, and fully realized the danger, arising from such defects, of this derailment if operated at a greater speed than three miles an hour; that, knowing the defects and the danger arising from them, the plaintiff, without being ordered or directed by his foreman, who was seated on the car, knowingly assisted in propelling the car at a speed of at least eight miles an hour; that the excessive rate of speed at which the car was propelled was the proximate cause of its derailment, which caused plaintiff's injuries."

One finding of fact by the Court of Civil Appeals is challenged by plaintiff in error's first assignment, which is, that there is no evidence to warrant the conclusion that Beck knew of the danger of the car derailing as a result of the defects pleaded by him if the same should be operated at a greater speed than three miles an hour. The question here presented under the former rulings of this court becomes one of law, whether or not there is any evidence in the record to warrant the finding of the court upon the issue challenged. We therefore have jurisdiction to determine that question.

A careful examination of the record sustains the contention of plaintiff in error that there is no evidence that would warrant the finding that Beck knew that there was danger of the car derailing if it should be propelled at a greater speed than three miles an hour. This fact was known to the foreman of the defendant in charge of the force of men under his authority and supervision, as testified to by him, but it nowhere appears that this knowledge was imparted to plaintiff by the foreman or any one else, or that he acquired such knowledge from any other source. There is no evidence upon the subject of plaintiff's knowledge as to the danger or increase of danger in running the car at a greater speed than three miles an hour. This being true, the case will be considered in the light of the findings of fact by the Court of Civil Appeals with the findings thus challenged eliminated, and with what additional light may be gathered from other facts in the record not found by the Court of Civil Ap-

peals.    This court may look to the transcript as to any facts not passed upon by that court.    Clarenden Land & Inv. Agency Co. v. McClelland Bros., 86 Texas, 188, 22 L. R. A., 105.

Before going further, it is deemed essential to state that the judgment of the Court of Civil Appeals is not based upon the doctrine of assumed risk, but upon that of contributory negligence.    As a conclusion of law, it is evident from the findings of fact, discarding the one finding heretofore referred to, that plaintiff would not be denied a recovery upon the doctrine of assumed risk, for while he knew of the defective condition of the hand car and the danger consequent upon the use of it, yet this would not make applicable the doctrine of assumed risk, for by reason of the finding of the Court of Civil Appeals that the proximate cause of the accident was not alone the defective car but the result of the excessive speed at which the car was propelled.    In order that the doctrine of assumed risk may apply where the injury results from the use of defective machinery with knowledge of such defect and the consequent danger of using such machinery, the injury must be the sole and proximate result of the use of the defective machinery, and not from other contingencies or defects causing or contributing to cause the injury.    In other words, as applicable to the case at bar, if the injury resulted from the excessive speed with which the car was propelled, then the defective car and the danger of its use by Beck with knowledge of the defect and danger would not preclude his recovery for injuries received on the ground of assumed risk.    Poindexter v. Receivers of Kirby Lumber Co., 101 Texas, 325; Missouri P. Ry. Co. v. Somers, 78 Texas, 442; Texas & N. O. Ry. Co. v. Kelley, 98 Texas, 137.

This is necessarily true for the reason that had the car been derailed and the injuries received while being propelled at a rate of speed not in excess of three miles an hour, Beck would be properly denied the right of recovery upon the ground that the proximate cause of the injury was the defective car and the danger resulting from its use, which were known to Beck and therefore the risk was assumed by him.

In view of the facts found by the Court of Civil Appeals the question of assumed risk is out of the case.

Is it a correct conclusion, deducible from the facts found by the Court of Civil Appeals as hereinbefore set out, that as matter of law the plaintiff is guilty of contributory negligence and for that reason cannot recover?    We think it true as a general proposition that the same rule of law applicable to assumed risk as above set forth is also applicable to the doctrine of contributory negligence.    But without the necessity of invoking this doctrine we are directed to the record and an examination of the evidence found there to the effect that while plaintiff knew of the defects in the hand car and that there was some danger in its use, yet he states that the foreman in charge of the working force assured him that the car with its defective wheels was nevertheless safe and ordered him to get upon it, and that he relied upon such assurance in riding upon and using the car.    The plaintiff, on this subject, testified as follows:    "Charlton told me to make the change in the wheels.    After the change of the wheels had

been made, Charlton he say when we get the car fixed, he say: 'It is all right, boys, get on it.' And we all got on the car and ride it; it was when we made the change in the wheels the first time. If he had not thought the wheels we put on were better than those already on, he would not have made the change. As to what I thought about the wheels being all right, about the car being all right and safe to ride on after the change was made—when all the other boys got on the car I have to get on too if I want to stay with him; he get on himself, and he say it is all right, safe; Jimmie said that. I said Jimmie said get on the car; he say it all right; I believe it when all the other boys get on; I thought the car wouldn't jump the track with me, when all the other boys got on I got on. I thought he knew what he was talking about; he said get on the car, that's all I know. I get on to ride when he told me to get on. After he told me that, I think it was safe when the other boys get on. I thought it was safe. As to what reliance I put upon that order of Charlton's when he said get on the car, I have to do what he told me; he was boss. As to what I thought as to whether I could do it safely or not safely, I think safe, I think safe to go on when he said it was safe.''

It appears from the testimony of plaintiff that defendant's vice principal in charge of the hand car and servants who were transported on it, when attention had been called to the defects of the car wheels and the probability of danger in the use of the car, assured plaintiff that the car was safe for use, and he relied upon such assurance. Can it be said that the plaintiff is guilty of contributory negligence as matter of law based upon the finding of the Court of Civil Appeals and the fact that the vice principal and foreman assured plaintiff when the defective car had been mentioned, that its use was safe?

It is an established principle of law, recognized by the almost unanimous current of judicial authority, that if the servant complains or directs attention to a defect in the machinery to be used by him, or danger to result from the use of same, and the master or his vice principal assures such servant that he can use such machinery with safety and directs that he proceed to use same, the servant, under such circumstances, will not, as matter of law, be held to have assumed the risk, or to have been guilty of contributory negligence, in relying upon the superior knowledge of such master or representative and continuing the use of such machinery, unless the danger of using such defective machinery is so apparent as to rebut the idea that reliance was placed upon such assurance. Wrong under such circumstances will not be imputed to the servant, as he would have the right to act upon the advice or assurance of the master or his vice principal, and the master, under such state of facts, would be estopped to impute assumed risk or contributory negligence, as matter of law, to the servant, but the issue would be one properly to be determined by the jury. Thompson, Law of Neg., vol. 4, sec. 4664; Gulf C. & S. F. Ry. Co. v. Duvall, 12 Texas Civ. App., 348, 35 S. W., 701; Hoffman v. Dickinson, 31 W. Va., 142; Wallace v. Standard Oil Co., 66 Fed., 260; Thompson on Neg. (1st ed.), 974, 975; 26 Cyc., 1235 (B).

The principle invoked and which we think applicable to the facts

of this case is tersely and accurately stated in Cyc., above cited, as follows: ''A servant is not guilty of contributory negligence where he relies upon the assurance or representations of the master or his vice principal as to the safety of the place of work, tools, machinery, or appliances, or upon his promise to protect and guard the servant from danger, unless the danger is so obvious and imminent that no ordinarily prudent person would undertake to perform the service.''

The rule is also thus stated with peculiar force and justness by Mr. Thompson in his work on Negligence, page 975: ''The duty of the servant being obedience, the law looks with indulgence upon his negligence in placing himself in a situation of danger when the master commands him to do so. Moreover, the law remembers that the respective situations of the master and servant are unequal, and excuses the servant for deferring to the superior judgment of the master.''

We think the Court of Civil Appeals erred in its conclusion from the facts found, as matter of law, that the plaintiff, Beck, was guilty of contributory negligence and therefore denied the right of recovery. As to whether the plaintiff was guilty of contributory negligence in riding on and assisting in propelling the defective car under the circumstances and facts of the case was a question for the jury. It may be said here, as was said in Poindexter v. Receiver of Kirby Lumber Co., above cited, ''The Court of Civil Appeals has not found any fact that defeats recovery, nor found against the existence of any which is essential to recovery, and we may properly act upon the verdict of the jury and the judgment of the District Court, unless some error was committed in the trial for which the judgment should be reversed.''

It was shown on the trial of this cause that Jim Charlton was in charge of the crew of men who worked for defendant under his control. That he was sitting in the car on a water keg between the handle bars, and was in a position to see and know and judge the rate of speed the car was being propelled. He was conscious of the danger of running the car at a greater speed than three miles an hour. He had power to command and exact obedience to his orders, by which the men operating the car would have been under obligation to have propelled the car slowly or rapidly at a mere suggestion from him. He had frequently exercised this authority and cautioned the men when he thought they were going too fast for their safety. On the occasion of the accident he admits that he neglected to warn the crew of the danger of running the car at a too rapid rate. In view of this statement of the facts it seems to us the plaintiff had a right to assume that if the car was being propelled at a dangerous rate of speed the vice principal of defendant would exercise his authority and perform his duty as the superior officer and notify him of any impending danger. He had the right to expect this, even though he knew of the defects in the car wheels and that there was danger in operating the car. It was further shown that plaintiff was without experience in the operation of hand cars, and relied upon the superior knowledge of his foreman. Charlton, the foreman, was in absolute control of plaintiff and other members of the crew. In part he testified in regard to his powers: ''I called my force a crew; the duties

of the men in the crew were to unload pipe; their duties with respect
to obeying my orders, was to obey them or quit; I said when they
were to go to work, and said how they were to get to the work, and I
told them when to quit work." * * * "If I told the men to run
slow it was their duty to obey me, and if I told them to run fast it
was their duty to obey me; as a matter of fact, I did have the power,
whether I exercised it or not, to control the rate of speed and control
them in the rate of speed at which they run the car." * * *. "I
thought that, while the wheels were in the condition I have described,
the car could be run at a mighty slow rate of speed, but at the same
time I thought it was dangerous, too, over that bad track. I should
think it wouldn't be safe to run it any faster than three miles an
hour; the reason I run it ten or twelve miles an hour, I just got care-
less and didn't care."

We think it in perfect harmony with the principle heretofore rec-
ognized by the ruling of this court, to hold the injured servant free
from contributory negligence in a case where the master assures such
servant that the use of defective machinery is safe and the defect
of the machinery and the manner of its use are not so manifestly
dangerous as to rebut the presumption that reliance in good faith
was had upon such assurances. It is the duty of the master to fur-
nish a safe place for the servant to work, to furnish reasonably safe
tools for use of the servant and, where it becomes necessary for the
master to transport the servant to and from his work, to furnish for
that purpose reasonably safe conveyances. The servant has the right
to expect such machinery, tools and conveyances to be proper and
reasonably safe and no duty of inspection devolves upon the servant.
In case of defective machinery, tools or conveyances and where the
servant has knowledge of such defects and the probable danger of
their use, yet if the master who controls the servant and directs his
work represents that the machinery or tool or conveyance is never-
theless safe and directs the servant to use same, it can not be said
upon sound reason that the servant under such circumstances would
be guilty of contributory negligence as matter of law, where an
injury results from the use of such defective machinery, etc. If
this rule is applied to the facts of this case, as shown by the record,
and independent of the finding of the Court of Civil Appeals, the
plaintiff cannot be said to have been guilty of contributory negli-
gence as a conclusion of law. He was working under the vice prin-
cipal of the master. The car was used by the master in getting its
crew of men to and from work. The car was defective. While the
defects were known to the plaintiff and he thought there was danger
in the use of the car, the master assured him the car was safe and
directed its use. The master was present and directing the work and
having control of the car and its movements by the crew, they being
subject to the master's instruction as to the speed of the car, and
the master being fully aware of the danger of propelling the car at
a greater speed than three miles an hour; sat silently by and observant
and permitted the car to be run at a speed of eight or ten miles an
hour. Beck cannot be said to be guilty, as matter of law, of con-
tributory negligence under such a state of facts.

The court submitted the cause to the jury upon the issue of negligence arising out of the operation of the defective car at an unreasonable rate of speed, with knowledge of the defective condition and the danger likely to result from such unreasonable rate of speed. The jury in the same connection were required to believe from the evidence before finding for plaintiff that he was inexperienced in the work of operating hand cars and that knowing the condition of the flanges he did not appreciate the danger of the car being derailed in consequence of such defects, but believed the car could be run with reasonable safety to himself; and further they were required to believe that under the circumstances a person with the experience and knowledge possessed by plaintiff, knowing the condition of the flanges as plaintiff did, would under the same or similar circumstances have used the car. All the issues raised by the pleadings and the evidence were properly submitted to the jury and by their verdict such issues were determined in plaintiff's favor. In view of this and that the Court of Civil Appeals has not found any fact where there is any evidence in the record that defeats recovery, or against the existence of any fact that is essential to recovery, we think the proper judgment to be here entered is to reverse the judgment of the Court of Civil Appeals and affirm that of the trial court. No substantial reason is pointed out in defendant's brief in the Court of Civil Appeals, which we think demands a reversal of this cause.

If the judgment of the Court of Civil Appeals was based upon the insufficiency of the evidence or upon the preponderance of the evidence we would not affirm the judgment of the trial court, but their judgment is based upon a legal conclusion drawn from certain facts found by that court. We do not agree with that conclusion and hence will reverse the judgment of that court and affirm that of the trial court, and it is so ordered.

*Reversed and judgment of District Court affirmed.*