SMITH et al. v. ATCHISON, T. & S. F. RY. (No. 130–3020.)

(Commission of Appeals of Texas, Section A. June 15, 1921.)

1. Master and servant ⚙287(5) — Evidence held to show injury through negligence of fellow servant removing stake on flat car.

In an action for injuries to an employee engaged in unloading timber from a car, testimony by the injured employee that, while he was loosening the last stake holding the timbers on the car, he saw the stake go upward in the hands of his fellow employee, who had been cautioned not to remove the stake while the other was working under it, *held* not to state a mere conclusion, but to be sufficient to sustain a finding by the jury that the fellow employee was negligent.

2. Release ⚙57(1)—Evidence held to sustain finding injured person was mentally incompetent to make settlement.

Evidence as to the mental condition of an injured employee after he received his injury *held* sufficient to sustain a finding by the jury that the employee was mentally incompetent to make a settlement with the employer for the injuries received by him.

3. Release ⚙17(2)—Tactics of claim agent not fraudulent may justify cancellation of settlement with weak-minded person.

Where the evidence was sufficient to sustain the jury's finding that after he was injured an employee was not competent mentally to make a settlement, the argument and tactics of the claim agent in securing such settlement would justify its cancellation, though they were not sufficient to constitute fraud if used against a man in possession of his normal mental powers.

4. Release ⚙24(2)—Tender of money received by invalid settlement held unnecessary.

The fact that an injured employee had invested part of money received from the employer in settlement in a farm does not establish an exception to the rule that one who has spent the money received in settlement need not tender its return if he offers to have the amount

credited upon any judgment he might recover, and therefore does not require a tender in such a case before suit to cancel the settlement and recover the damages.

5. Release ⚙24(2)—Tender of money received unnecessary where defendant maintains validity of settlement.

Where the employer took the position that its settlement with its employee was valid and conclusive, so that any offer by the employee to return the amount paid him in settlement would have been refused, it cannot insist that a preliminary tender was a prerequisite to his action to cancel the settlement and recover the damages.

6. Release ⚙24(2) — Tender unnecessary where party is entitled to at least the amount received.

In an action for a rescission of a settlement, plaintiff is not obliged to tender back the money received in settlement where, in any event, he would be entitled to retain that amount either by virtue of the settlement or of the original liability.

7. Appeal and error ⚙1114—Findings by Court of Civil Appeals held to preclude affirmance of lower court's judgment.

Where the determination by the Court of Civil Appeals that the evidence was insufficient to sustain the verdict of an injured employee was erroneous, but the Court of Civil Appeals made findings of fact under which the injured employee was not entitled to recover, the trial court's judgment cannot be affirmed on writ of error to the Court of Civil Appeals, but the cause must be remanded for a new trial.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by Mike E. Smith and others against Atchison, Topeka & Santa Fé Railway Company, L. M. Dunaway, and others to set aside a settlement between the named defendants as a fraud upon the rights of plaintiffs as attorneys for defendant Dunaway, in which defendant Dunaway filed an answer and cross-bill alleging the settlement was invalid, and asking damages for personal injuries. A judgment in favor of the plaintiffs and defendant Dunaway against the defendant railway company was reversed, and judgment rendered for the railway company by the Court of Civil Appeals (190 S. W. 761), and plaintiffs and cross-complainants separately bring error. Judgment of the Circuit Court of Appeals reversed, and cause remanded for new trial.

M. Carter, of Colorado, Tex., and Royall G. Smith, of El Paso, for plaintiffs in error.

Harrison & Miller, of Brownwood, and Shepherd & Sandusky, of Colorado, Tex., for defendant in error.

TAYLOR, P. J. L. M. Dunaway, one of the plaintiffs in error, an employee of defendant in error railway company, was injured

while at work unloading a car with George Bridwell, a coemployee. On November 11, 1913, a settlement was had between Dunaway and the company, the former executing a release of all claims growing out of his injuries, in consideration of payment by the latter of the sum of $3,750.

On December 5, 1913, this suit was instituted by Mike E. Smith, L. M. Levy, and G. W. Dunaway, attorneys, against defendant in error railway company, the Pecos & North Texas Railway, the First National Bank of Sweetwater, and L. M. Dunaway. Plaintiffs alleged the negligent injury of Dunaway, and, further, that he had settled his claim for damages with the railway company, but that prior to the settlement he had employed plaintiffs as his attorneys to prosecute his suit for damages, and in consideration therefor had assigned to them an undivided three-tenths interest in his cause of action; that the company had notice of such assignment at the time the settlement was made. Plaintiffs prayed for judgment against the railway companies for three-tenths of the actual damages so sustained by L. M. Dunaway, and, in the alternative, for a judgment against the companies and Dunaway for three-tenths of the amount for which Dunaway had settled his claim. The money paid Dunaway was by him deposited in defendant bank, and an injunction was sought to prevent it from paying it out.

L. M. Dunaway filed an answer to the petition, and a cross-bill against the railway companies, alleging that the contract of settlement was invalid by reason of the fact that he was mentally incapacitated at the time to enter into a contract; that the amount received by him was wholly inadequate; and that at the time of the settlement he was in distressed financial circumstances, and was induced to make the settlement by reason of certain false representations made to him by the agents of the railway companies. Damages were sought for his injuries in the sum of $50,000, less the amount of $3,750, which he had received from the Atchison, Topeka & Santa Fé Railway Company.

Plaintiffs filed an amended petition, containing substantially the same allegations relative to the settlement as were contained in Dunaway's cross-bill.

Upon the trial the plaintiffs and Dunaway dismissed as against the Pecos & North Texas Railway Company, and plaintiffs dismissed as against the First National Bank of Sweetwater.

The cause was submitted to the jury on special issues, and upon the findings judgment was rendered canceling the contract of settlement made by Dunaway, and in favor of plaintiffs against the Atchison, Topeka & Santa Fé Railway Company and L. M. Dunaway for the sum of $2,400, and in favor of Dunaway against the railway company for $1,850, or an aggregate of $4,250, which was $8,000 less the $3,750 paid Dunaway. The Court of Civil Appeals reversed the judgment of the District Court, and rendered judgment in favor of defendant railway company. 190 S. W. 761.

L. M. Dunaway and his attorneys made separate applications for writ of error, which which were referred to and granted by the committee of judges.

The Court of Civil Appeals was of opinion that the railway company's assignments of error to the effect that the evidence was insufficient to support the findings of the jury that Bridwell was guilty of negligence, and that Dunaway was mentally incapacitated to make a valid contract of settlement, should be sustained.

Upon careful consideration of the record, we are of opinion that there was evidence warranting the submission of the special issues bearing on the questions of both mental incapacity and negligence. Only a small portion of the testimony need be stated as bearing on the latter issue.

[1] Dunaway and Bridwell were unloading a flat car loaded with bridge material, timbers 3x10 and 18 feet long, and large ties. The timbers were stacked along the edge of the car in two stacks about 20 planks high, and between the timbers were the ties. The timbers were held in place by upright stakes on the sides of the car. In the process of unloading all of the stakes had been pulled out of their sockets except one. The following is Dunaway's statement as to what then took place:

"When we got down to the timbers we pulled all the stakes out but one, and I told him (Bridwell) I would loosen it up a little, and then I would get back, and for him to pull the stake out, and then we would just roll these timbers off. I told him not to touch the stake until I loosened it up and got back out of the way, and he says all right, and I took a shaker bar and hit the stake a lick or two to loosen it up, and he—I seen him do it—seen him falling as he went back while I was looking at * * *. I seen the stake go up in his hand, and he went right back with the stake in his hand and the timbers came right over on me. I think I had hit the stake two or three licks. I don't think more than two; I had loosened it just a little bit—just begun to slip a little bit. It was tight, and I could see it slipping—see where it would give a little out of the pocket. * * * We could not pull the stake out of the pocket; it was drove in too tight. Both Mr. Bridwell and myself tried to pull it out. * * * We had gotten all of them out except one about the center of the lumber. Bridwell and I tried to pull that one out; it was not touching the lumber anywhere. We stood up on top and tried to pull it out. I went and got the shaker bar myself, and stood on the ground to drive this stake out. * * * I told Bridwell not to touch the stake because I knew when it was pulled

out his force would kick that timbers off with him on top. * * * I wanted him to leave the stake alone until I could get out of the way, and he said he would; I did not watch him."

Bridwell testified that he was on top of the timbers and had hold of the stake, but was not pulling it; that he fell down across the car as he felt the timbers moving; that the blow of the hammer knocked the stake out of his hand.

The jury found that Bridwell pulled the stake out of its socket as alleged by Dunaway; that in so doing he was guilty of negligence; and that the pulling of the stake proximately caused Dunaway's injury. The evidence, in our opinion, is of such character that there is room for ordinary minds to differ as to the conclusion to be drawn from it. Lee v. Ry. Co., 89 Tex. 583, 36 S. W. 63; Wininger v. Ry. Co., 105 Tex. 56, 143 S. W. 1150. We would not feel warranted in saying that as a matter of law Bridwell did or did not pull the stake. The question of whether he did so, and did so negligently, was for the jury.

[2] Whether the evidence raised the issue of the mental incapacity of Dunaway to make the settlement with the railway company is the next question to be considered.

Dr. Britton testified that he had known Dunaway for 22 or 23 years; that he had attended him during his boyhood days, and also treated him through an attack of fever some 10 or 15 days. After Dunaway's marriage he treated him through a spell of pneumonia. He stated that he regarded Dunaway's mental condition as bad after his injury—"different to what it formerly was"; that he would not undertake to pass on Dunaway's mental condition were it not for the fact that he had known him previously, and found his condition after the injury altogether different from what it was when he knew him formerly. He was first impressed by the fact that Dunaway recited to him the things concerning himself which he (Britton) already knew, and which Dunaway, had he been normal, must have known he knew. He had known Dunaway at Dothan, his former home, had known him well, and had treated him on the occasions mentioned; and notwithstanding this, Dunaway told him, as if he had been a stranger, that he formerly lived at Dothan; that his father lived there, etc. His conversation was such that Dr. Britton formed the opinion that "he was nutty." On a subsequent visit to his office Dunaway told him he had been railroading, and that he was hurt while working for the railroad, how long he had been in the hospital, etc., just as if he (Britton) knew nothing of these matters, nothwithstanding Dunaway had already been treated by him at a former visit for those very injuries.

W. I. Agnew, who lived at Dothan, and who had known Dunaway about 20 years, testified that he had met him at Cisco in 1913 following his injury; that he talked to him some time, and began to think there was something wrong with his mind; that he made use of such expressions as "You ought to remember me; I used to be an old settler out in that country around Dothan." Agnew stated further that he went with Dunaway to the ice cream parlor, and that as they sat and talked he noticed from his conversation that it was more like a child's than a man's talk. "He would start to say something, and then it seemed that he would drop off and not finish the conversation." Agnew had not noticed anything wrong with his mind prior to that time.

Mrs. Dunaway testified that her husband's mind following the injury was like a child's; that he would forget things, and did not seem to realize how to do anything nor what to do; that when he would start out to work he would forget what he wanted to do, and did not seem to know how to begin his work. She gave as one incident of his mental lapses that he ran a cotton planter half a day without any seed in it. She stated that it was necessary to watch him about feeding the horses; that he would feed as much to one horse as two ought to have. She testified also that his attitude towards the children had changed in that he had become more like a child himself; that he did not seem to realize or know when the children needed correction; that he would sit down and laugh and talk and play with the children better than he could hold a conversation with grown people; that his mind could not be held on the same subject long at a time; that it would run off on some frivolous something, or something that did not concern the conversation at all.

J. E. Dunaway, father of plaintiff Dunaway, stated that his son's mental condition was weak; that he did not seem to have any self will or resisting power; that he could not depend upon himself, and yet wanted to.

It is not necessary to refer to more of the testimony along this line. Much testimony was brought out on cross-examination that tended to weaken the effect of some of the statements made on direct examination. The jury found, however, that Dunaway was mentally incapacitated to make a valid contract of settlement at the time he gave the claim agent the release, and there was evidence, in our opinion, to sustain the finding.

[3] If Dunaway was not competent mentally to make settlement of his claim, the jury's findings with respect to the arguments and tactics of the claim agent, while perhaps not sufficient, as against a man possessing his normal mental powers, to constitute fraud, were nevertheless, when considered in connection with the finding as to Dunaway's

mental incapacity, such as to warrant a cancellation of the release executed by him. There was evidence to warrant the court in submitting to the jury the question of Dunaway's mental incapacity to contract and to support the issue of misrepresentation and fraud.

Dunaway alleged that he had used the money received from the railway company in consideration of the execution of the release of his claim for damages, and that he had no money with which to make a tender, but asked to have the amount so received credited upon any judgment he might recover.

[4] It was not necessary to Dunaway's suit for rescission of the settlement that he tender the amount paid him in the settlement. Northwestern Life Ass'n v. Findley, 29 Tex. Civ. App. 494, 68 S. W. 695; Railway v. Shuford, 36 Tex. Civ. App. 251, 81 S. W. 1189; Railway v. Cade, 93 S. W. 124; Railway v. Jowers, 110 S. W. 946; North American Accident Ins. Co. v. Miller, 193 S. W. 750. The fact that he had invested a part of the money received in a farm, which he owned at the time of the trial subject to an incumbrance, affords no basis for creating an exception to the rule.

[5] The position of the railway company was that the settlement was valid and conclusive. Under this condition it is patent that any offer by Dunaway to return the amount paid him would have been refused by the railway company. No preliminary tender can be insisted upon as a bar to legal action where the facts show the tender would have been rejected.

[6] Furthermore, one is never obliged, in an action for rescission, to restore that which in any event he is entitled to retain either by virtue of the contract sought to be set aside, or of the original liability. The restoration of the amount, or an offer to restore it, was therefore unnecessary as a condition to Dunaway's right to maintain the suit. The amount paid Dunaway in the settlement was properly credited on the judgment, thus affording to the railway company the full protection to which it was entitled.

[7] If the Court of Civil Appeals had gone no further than to hold there was no evidence of negligence on the part of Bridwell, and that there was no evidence to sustain the findings by the jury that Dunaway was mentally incompetent to execute a valid release, we would recommend an affirmance of the judgment of the trial court. The Court of Civil Appeals, however, made findings of fact, the effect of which is to defeat recovery by plaintiffs in error.

Judge Dunklin, after enumerating some of the facts bearing upon the question of mental incapacity, says:

"His [Dunaway's] testimony, especially when viewed in connection with the facts just enumerated, conclusively establishes the fact that, if he was weak-minded, such mental condition was not such as to preclude him from a thorough understanding of the terms of the contract and of the legal consequences of executing it."

Speaking for the court on the effect of Dunaway's testimony relative to Bridwell's pulling the stake, he says:

"As conclusively shown by the testimony of Dunaway quoted above, he did not see Bridwell pull the stake; his testimony being merely his conclusion or opinion that he did pull it, and that as a result of that act the timbers fell from the car. The decision of those issues was the exclusive province of the jury, and, if that objection had been urged to the testimony, doubtless it would have been sustained. But it is well settled that a verdict cannot be sustained by incompetent testimony, even though it is admitted without objection"—citing authority.

We may say, referring again to Dunaway's testimony quoted herein, that, taken as a whole, it was not such a mere expression of opinion or conclusion by him as to render it incompetent. His only purpose, according to his statement, in striking the stake was to "loosen it up a little." He says he did this, striking it not more than two or three licks, loosening it a little in its socket. He saw it was loosened and beginning to move, and saw it go up in Bridwell's hands as he went backward with it. Such testimony, in our opinion, is more than a legal conclusion. It furnishes the jury facts from which it could determine whether Bridwell pulled the stake after Dunaway had loosened it with a small shaker bar.

Following a discussion in the opinion of whether the presumption could be indulged that Dunaway knocked out the stake, and a discussion of this presumption in connection with Dunaway's statement, the court finds further:

"Such proof was not legally sufficient to support the findings of the jury that the injury was the proximate result of Bridwell's alleged negligence, and the same was the only proof offered to sustain such findings."

The Court of Civil Appeals, in view of the foregoing findings and conclusions, reversed the judgment of the trial court, and rendered judgment in favor of defendant in error.

In our opinion all of the issues discussed were fact issues and should be determined by the jury. While we do not agree with the conclusions of law reached by the Court of Civil Appeals, we are not warranted in recommending an affirmance of the trial court's judgment. The Court of Civil Appeals having made findings of fact that defeat recovery, it is necessary that the cause be remanded for another trial. Beck v. Texas Co., 105 Tex. 303, 148 S. W. 295.

We recommend, therefore, that the judg-

ment of the Court of Civil Appeals be reversed, and that the cause be remanded for a new trial.

PHILLIPS, C. P. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes