## GOODRICH v. PANDEM OIL CORPORATION.

### No. 1270—5748.

Commission of Appeals of Texas, Section B.

April 21, 1932.

W. J. Rutledge, Jr., of Dallas, and Black & Graves, of Austin, for plaintiff in error.

Murphy W. Townsend, Winfrey & Lane, and Martin B. Winfrey, all of Dallas, and Tom Scurry, of Houston, for defendant in error.

LEDDY, J.

Defendant in error brought this suit against plaintiff in error in the district court of Dallas county to rescind a contract by which it purchased from him an oil and gas lease on 35½ acres of land described as the north 35½ acres of the west 115½ acres of survey No. 107, block 194, certificate 391, C. T. & M. C. Railway Company lands in Pecos county, Tex. Recovery was asked for $25,-000 paid to plaintiff in error as purchase money for this lease and $2,500 additional, which defendant in error paid as commission to the real estate broker, who negotiated the sale of said lease.

The basis for the rescission asked was that plaintiff in error had fraudulently represented to defendant in error that he owned a lease on 35½ acres of land in said survey, when in truth and in fact there was substantially less than 35½ acres of the oil and gas lease owned by him at the time of said sale.

Upon the trial the following special issues were submitted to and answered by the jury:

"Special Issue No. 1. Do you find from a preponderance' of the evidence that on the occasion of the sale of the oil and gas lease in question in this suit that the defendant, Robert D. Goodrich or his agent, Tom Knight, represented to plaintiff that he owned a lease on at least 35½ acres of land in Section 107 in Pecos County, Texas, in question in this suit? Answer Yes or no. Answer: Yes.

"Special Issue No. 2. Do you find from a preponderance of the evidence that the agents and representatives of the Pandem Oil Corporation believed the representations of the said Robert D. Goodrich or his agent, Tom Knight, with respect to said acreage? Answer yes or no. Answer: Yes.

"Special Issue No. 3. Do you find from a preponderance of the evidence that the agents and representatives of the Pandem Oil Corporation relied upon the representations of said Robert D. Goodrich or his agent Tom Knight, with respect to said acreage in making the purchase of it from him? Answer yes or no. Answer: No.

"Special Issue No. 4. Do you find from a preponderance of the evidence that the corner located by Dodd on the Pecos River as the southeast corner of Section 70 and used by him in making his survey of Runnells County School Lands No. 3 in 1918 was located at the same place that said corner was fixed by Kuechler in making the original survey of. Section 70 Block No. 1, in 1876? Answer Yes or no. Answer: No.

"Special Issue No. 5. Was the location made by A. N. Lea, surveyor, in 1913 of the south line of Section 70 and used by him in preparing field notes of surveys 107 and 108 located at the same place as said line was located by Kuechler in 1876? Answer yes or no. Answer: Yes."

Based upon the above findings of the jury, the trial court rendered a judgment that defendant in error take nothing by reason of its suit. It thereupon perfected an appeal to the Court of Civil Appeals. Upon consideration of the case, that court reversed the judgment of the trial court and rendered judgment in favor of defendant in error against plaintiff in error for the full amount sued for. In the opinion of the Court of Civil Appeals it was held that there was no evidence to sustain the jury's finding that defendant in error did not rely upon the representations made by plaintiff in error that he owned 35½ acres of the oil and gas lease in said section 107. It was further held by said Court of Civil Appeals that there was no evidence to sustain the finding of the jury on the special issues as to the correctness of the Lea survey.

Plaintiff in error asserts in this court that there was sufficient evidence to sustain the finding of the jury that defendant in

error did not rely upon any representation made by him that the oil and gas lease on section 107 which he proposed to sell to defendant in error contained 35½ acres. In our opinion, this contention is sound and must be sustained.

Plaintiff in error owned an oil and gas lease on said section 107. It is undisputed that, according to the original field notes of this survey, it actually contained within its boundaries 315½ acres. At the time plaintiff in error made the deal with defendant in error involving the transfer of the oil and gas lease on 35½ acres, he had previously sold a lease on the east 200 acres of said survey to the Pure Oil Company and had also sold the lease on the south 80 acres of the west 115½ acres to one Parten. If his title was good to the land described within the original field notes of survey 107, he unquestionably had 35½ acres remaining unsold at the time he assigned it to defendant in error.

It seems that plaintiff in error agreed with defendant in error's agent to transfer this lease to it in consideration of the payment of $25,000 in cash, the latter to pay its broker a commission for consummating such deal. When the final papers were ready to be prepared, plaintiff in error informed the defendant in error that he would not warrant the title to this land, and that he would only give a quitclaim assignment thereto. The defendant in error demurred to accepting the quitclaim and considerable negotiations were had between the parties. With respect to such negotiations plaintiff in error testified:

"They wanted to know why I would not give them the warranty to it, and I told them that I was afraid of that whole area out there, that some suit might be filed that would wipe out the whole area and I didn't want anything in a year or two years or five years to come up on which they would come back on me for the money, and I wanted them to know when they paid me the money it was going out of circulation, that I didn't want to make any kind of deal where there would be any comeback."

"The matter of my responsibility after the sale was concluded was discussed with reference to the kind of conveyance I was making, the kind of sale I was making. I remember several things said along that line, and I told the Pandem that I didn't want them to come back on me for any money, that I wanted to make them the kind of assignment whereby I would be sure that I was getting myself loose from it without any recourse. I don't think we discussed the matter of titles and matter of the surveys in these different conversations. I don't think we discussed the general conditions of that area there in reference to the survey location. I made the statement that I was afraid of the whole area and for that reason didn't want to warrant the title to it."

"They asked me up there if I wanted to sell them something that I didn't have and I told them that I certainly did not have any intention or want to sell them anything I didn't have, but whatever I sold them I wanted to fix it in some way where I would be clear and that there would be no come back on me."

With reference to a letter the defendant in error agreed to execute releasing plaintiff in error from any liability on his warranty as to title, the latter testified as follows: "He then testified that after the form of assignment had been drawn which was later executed Mr. Knight told him 'that he had talked it over with the Pandem and they were to give me a letter which would place me in a position whereby they would not come back on me for any money in the event that anything should happen to that land in the future.'"

It was shown that plaintiff in error finally executed an assignment of the lease warranting the title only as to those claiming by, through, or under him.

It is admitted that the following letter, though not signed, was agreed to be delivered to the plaintiff in error by the defendant in error at the time the deal was closed:

"December 22, 1927.
"Mr. Robert D. Goodrich, San Angelo, Texas.
"Dear Sir: Simultaneously with the delivery of this letter, you are delivering to this Company an assignment, assigning to it a certain oil and gas lease, covering Survey 107, Block 194, Pecos County, Texas, dated October 6, 1925, made by J. H. Tippett, individually and as community survivor, as Lessor, to you, as Lessee, in so far as said lease covers the acreage described in said assignment.

"As a consideration for your executing and delivering said assignment to this Company in the form approved by our attorney, we write this letter to assure you that it is understood and agreed that for any defect in the fee title of the lessor you shall not be held responsible under the covenants and warranties recited in the assignment, and that on your covenants and warranties this Company will hold you responsibility only for defects in the title arising under the lease itself and resulting from your own acts. and/or omissions.

"Very truly yours,
"The Pandem Oil Corporation
"By —————, President."

The record further discloses that plaintiff in error furnished a correct abstract of the title to the lease to defendant in error, and that its attorney, after examining such abstract, approved the title thereto.

■ We think the record clearly discloses that the issue as to whether defendant in error relied upon plaintiff in error's represen-

tations that he owned 35½ acres oil and gas lease in survey No. 107 presented a jury question, and that in the state of the record the Court of Civil Appeals was in error in deciding that the jury's answer to such issue was without any support in the evidence.

█ It is true that one of the officers of defendant in error testified positively that in purchasing said oil and gas lease he relied upon plaintiff in error's representation as to the amount of acreage owned by him in said survey. But he was an interested witness. It was therefore within the province of the jury to determine his credibility and the weight to be given to his testimony. Cheatham v. Riddle, 12 Tex. 112; Coats v. Elliott, 23 Tex. 606; Houston E. & W. T. Ry. Co. v. Runnels, 92 Tex. 307, 47 S. W. 971, 972.

It must be borne in mind that the shortage in acreage claimed to exist by defendant in error in survey 107 resulted solely from a failure of plaintiff in error's title. If such shortage in fact existed, it was due to the conflict between its lines with a senior survey. There was in fact no shortage of acreage in survey No. 107 according to its original field notes, as it is undisputed that within the boundaries of such survey there were 315½ acres. The evidence disclosed that 280 acres had been previously conveyed by plaintiff in error to other parties which would leave 35½ acres but for the conflict aforesaid.

Plaintiff in error refused to warrant this title. He stated to the agents of the defendant in error that he was fearful of suits being filed in that area that might wipe out all of the land owned by him. He positively declined to convey the land to the defendant in error under such circumstances as would authorize it to hold him responsible because of any failure of title. It was also shown that defendant in error would not purchase this lease until its attorney had examined an abstract to the land and approved the title thereto. All of these facts and circumstances furnished a sufficient basis for the jury's finding that plaintiff in error's statement as to the acreage owned by him was not in fact relied upon by the defendant in error at the time it purchased such lease.

In all of his conversations with the officers of defendant in error plaintiff in error continuously and repeatedly expressed an unwillingness to rely upon his own belief that he had a good title to the 35½ acres which he was proposing to sell. He frankly informed the purchaser that he was afraid of the whole area in which this land was situated. In the most positive way he notified them that he was not willing to assume any kind of responsibility for his belief that he had a good title to this lease. The fact that he was so doubtful as to his ownership of the land, that he would not agree, even for a large cash consideration, to incur any responsibility by warranting the title, was a circumstance which the jury might properly determine to be sufficient to excite the attention of the purchaser and prevent it from relying upon his statement. Plaintiff in error's conduct during the course of the negotiations strongly indicated that he entertained a substantial doubt as to whether his title to this lease was good. This being true, we cannot say that this record shows as a matter of law that defendant in error relied upon his statements in purchasing the same. Jackson v. Stockbridge, 29 Tex. 395, 94 Am. Dec. 290; Wooters v. Ry. Co., 54 Tex. 294; Bruner Bros. v. Strong, 61 Tex. 555.

█ Having determined that the Court of Civil Appeals erred in reversing the judgment on account of there being no evidence to sustain the finding that the defendant in error relied upon the representations made by plaintiff in error, it becomes our duty to examine the record to ascertain whether there was any other assignment presented by defendant in error in the Court of Civil Appeals which would justify that court's reversal of the cause. Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185.

█ Under our holding, defendant in error's complaint that there was no evidence to sustain the finding of the jury upon the special issues submitted involving the shortage of acreage becomes immaterial. It would not avail defendant in error anything if there was in fact a shortage of acreage in Survey No. 107, as the finding that defendant in error did not rely upon the representations made the basis for a rescission of the contract would operate to deny a recovery by defendant in error.

█ Defendant in error presented in the Court of Civil Appeals an assignment complaining of misconduct of the jury while deliberating upon its verdict in this case. The misconduct complained of was that the jurors agreed among themselves before answering the issues that a verdict should be rendered in favor of plaintiff in error, and subsequently answered the issues so as to accomplish this result.

Upon the hearing of the motion for a new trial several of the jurors were interrogated with reference to the alleged misconduct. The testimony given by these jurors covers several pages of the transcript, and we do not deem it necessary to copy the same here. It is sufficient to say that we have carefully read this testimony. By it there is shown a clear conflict as to whether the misconduct complained of in fact occurred. In this state of the record we must assume, in support of the trial court's judgment overruling the motion for a new trial, that said court accepted that portion of the evidence tending to show that no such misconduct occurred.

610

Houston & T. C. Ry. Co. v. Gray, 105 Tex. 42, 143 S. W. 606; Bradley v. Texas & Pac. Ry. Co. (Tex. Com. App.) 1 S.W.(2d) 861.

We are in agreement with the holding of the Court of Civil Appeals that defendant in error's motion for a new trial was filed in the district court within the time required by the terms of article 2092, subd. 29, R. S. 1925.

■ Had the Court of Civil Appeals remanded this cause, we would have no authority to dispose of the same otherwise than to sustain such remand, notwithstanding our disagreement with the reason assigned for such reversal by the Court of Civil Appeals. Wilson v. Hagins, 116 Tex. 538, 295 S. W. 922; Electric Express & Baggage Co. v. Ablon, 110 Tex. 235, 218 S. W. 1030; Wilson v. Freeman, 108 Tex. 121, 185 S. W. 993, Ann. Cas. 1918D, 1203.

■ But the said court upon reversing the judgment has rendered a final judgment in favor of defendant in error. Under such circumstances we are authorized upon reversing its judgment to render final judgment by affirming what we have determined to be a correct judgment of the trial court. Cox v. Ry. Co., 111 Tex. 8, 222 S. W. 964; Beck v. Texas Co., 105 Tex. 303, 148 S. W. 295; Walton v. Walton (Tex. Com. App.) 228 S. W. 921.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed and the judgment of the district court affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed.