**DAVIS et al. v. NATIONAL BOND & MORT-
GAGE CORPORATION. \***

No. 12546.

Court of Civil Appeals of Texas. Fort Worth.
Oct. 17, 1931.

Rehearing Denied Nov. 21, 1931.

*Writ of error granted.

Preston B. Cox, of Wichita Falls, for appellants.

Karsten & Lopp, of Fort Worth, for appellee.

CONNER, C. J.

This suit was instituted by the appellee mortgage corporation against Sam Davis and wife, Olive Davis, and John W. Howell and wife, Minnie V. Howell, to recover upon a promissory note for $2,500, and to foreclose the lien securing the same by a deed of trust upon lot 2 in block 20, Westside addition to Floral Heights addition in the city of Wichita Falls, Wichita county, Tex.

The trial was before the court without a jury, and the trial judge has filed his conclusions of fact and law upon which judgment was rendered in favor of the plaintiff mortgage corporation against Sam Davis and John W. Howell personally, and foreclosing the lien upon the property above described as against Mrs. Olive Davis. The Howells have not appealed from the judgment. Sam Davis and wife, however, have attempted to appeal by giving an affidavit of inability to furnish an appeal bond or security for the costs, and we are first confronted with appellee's motion to dismiss the appeal on the ground that the affidavit is fatally defective, in that it fails to sufficiently describe the judgment from which they seek to appeal. To this appellants reply that the motion comes too late, not having been filed in this court 30 days after the filing of the transcript as required by rule 8 promulgated for the government of Courts of Civil Appeals. The transcript was filed in this court on the 23d day of January, 1931, and the motion to dismiss on the 17th day of September, 1931, and the rule is to the effect that all motions relating to informalities in the manner of bringing a case into court shall be filed and entered by the clerk on the motion docket within 30 days after the filing of the transcript in the Court of Civil Appeals; otherwise the objection shall be considered as waived, if it can be waived. A violation of the rule authorizes a dismissal of the motion. Farmers' State Bank v. Bell (Tex. Civ. App.) 176 S. W. 922; Hamlet v. Leicht (Tex. Civ. App.) 187 S. W. 1004. But the rule has no application when the question of jurisdiction is involved. See Zarate v. Cantu (Tex. Civ. App.) 225 S. W. 285.

In Foster v. Bunting, 19 S.W.(2d) 784, this court announced the rule well recognized in the authorities that an appeal bond defective in form or substance could be amended under the terms of article 1840, Rev. Statutes, and hence conferred jurisdiction upon this court. But we find no such provision relating to an affidavit of inability to pay costs. It hence follows that, in the absence of an appeal bond and in the absence of an affidavit of inability to pay costs or give security therefor, as required by the statutes, this court is wholly without jurisdiction. Rollins v. Hickey Estate (Tex. Civ. App.) 30 S.W.(2d) 599; Demonet v. Jones (Tex. Civ. App.) 42 S. W. 1033; Perry v. Scott, 68 Tex. 208, 7 S. W. 384; Vestal v. Reese (Tex. Civ. App.) 28 S. W. 54; McShirley v. Hoard (Tex. Civ. App.) 46 S. W. 373; Wesley v. Kuteman, 26 Tex. Civ. App. 365, 62 S. W. 1074; Bush v. Atwood (Tex. Civ. App.) 133 S. W. 924; Ford v. Johnston (Tex. Civ. App.) 164 S. W. 424. The 30-day period prescribed by rule 8, above referred to, therefore, is not available as a defense to the motion to dismiss; the issue of our jurisdiction being involved. If in fact the affidavit under consideration sufficiently describes the judgment, our jurisdiction attaches.

The affidavit in question gives the number of the case in the lower court, the name of the plaintiff, and the names of the defendants, the court in which the case was tried, to wit, the Seventy-Eighth judicial district court of Wichita county, and declares that Sam Davis and wife desired "to appeal from the judgment heretofore rendered in this cause to the Court of Civil Appeals," etc. It further shows that the affidavit was presented to the trial judge, to wit, W. W. Cook, judge of the Seventy-Eighth district court, Wichita county, that he heard proof thereof, and, being satisfied that the defendants named were unable to pay the costs or any part thereof, or to make bond, that the following order was entered, to wit: "It is ordered that this affidavit be approved and filed with the clerk of this court in lieu of an appeal bond."

This was done in open court on the 9th day of December, 1930, and filed by the district clerk of said county on the same date.

The judgment entered in this case covers some four typewritten pages, and is set out in the transcript on pages 85 to 88, inclusive, and the transcript fails to show any other judgment in the case. We think the axiom, "id certum est quod certum reddi potest," applies, and that the affidavit sufficiently describes the judgment appealed from, and the motion to dismiss is accordingly overruled.

We are thus brought to a consideration of the questions presented on the appeal.

The facts upon which we base our conclusions are substantially undisputed. Relating them in their chronological order, they are substantially as follows: Appellants Sam Davis and wife, Olive Davis, were the owners

of lot 2, block 20, in the Westside addition to Floral Heights addition to the city of Wichita Falls, Wichita county, Tex. John W. Howell and wife, Minnie Howell, owned 20 acres of suburban property situated near the city mentioned. This 20 acres was the unsold part of 160 acres that had been owned by the Howells. On the 19th day of April, 1928, Sam Davis and John W. Howell entered into a written contract for an exchange of their properties. The contract recites that the agreed value of the Davis lot was $3,500 and subject to liens and incumbrances of $1,200, including back interest payments and taxes. The agreed value of the suburban lot was $2,850, subject to an incumbrance of $700 of an existing lien note of $900 resting on the 160 acres. Davis was to assume this lien, and Howell was to assume the incumbrance of the liens upon the property of Davis. The contract provides that a new loan was to be placed upon the Davis lot by the Howells, and that Anglin & Oakes, a firm of land agents who had initiated the proposed exchange of property and to whom both parties to the contract were to pay a commission, were to "look after" the same. Each party was to furnish the other with a complete abstract of title to the properties to be conveyed by them, showing a "merchantable title" free and clear of all incumbrances except those named in the contract above specified. It was further provided that within 10 days of the receipt of the abstract the party receiving the same should accept title or return the abstract with written objections, but, in the event the title was not good and could not be made good within a reasonable time, the contract was to be canceled; that "when title objections have been cured each party agrees to deliver a good and sufficient warranty deed properly conveying his property to the other." It was agreed that Anglin & Oakes should represent both parties in the transaction. The contract was duly signed by the parties but not acknowledged and never recorded. On the 9th and 12th days of May thereafter, the parties executed deeds to their several properties and deposited them with the agents named in the contract, to be by them held until an abstract showing merchantable title to the suburban lot was furnished by the Howells. The agents, however, without any instruction on the part of either Sam Davis or his wife to do so, deposited the deeds in the registry of the court and the same were recorded in due form, and thereupon arrangements were made for the construction of improvements on the Davis property in behalf of the Howells as contemplated by the contract. In doing this, as we gather from the evidence, there was expended some $1,300 for the construction of improvements on the Davis lot, to secure which, together with the $1,200 lien already resting upon the Davis property which was owned and held by the Continental Savings & Building Association, and which had been assigned to the mortgage company, John W. Howell executed his promissory note in the sum of $2,500 and the trust deed securing the same upon the Davis property. It is upon these instruments that appellee's suit is founded.

The evidence indicates that these several proceedings were directed by the agents referred to. It developed, however, that the Howells were unable or at least failed to furnish Davis with the abstract showing merchantable title to the suburban property, whereupon Howell reconveyed the lot which Davis and wife had deeded to him, and Davis and wife reconveyed the suburban property to the Howells; said deeds being executed for the purpose of removing the clouds upon the respective titles by the unauthorized record of the first deeds or of the former deeds.

At all times mentioned and involved in the transactions under consideration, Sam Davis and wife occupied the lot above mentioned as their homestead. The evidence seems undisputed that neither Sam Davis nor his wife consented to the recording of the deed to their property to the Howells, and there was no evidence to show that they or either of them ever delivered the deed to Howell or to his agent for him. It seems also undisputed that Mrs. Davis, although living on the property and though aware of the construction of Howell's improvements, was without knowledge of an actual failure, or probable failure, of the Howells to furnish an abstract showing good title to the suburban property, and there is no evidence of a want of good faith on her part in any respect.

The trial court found that the recorded deed from Davis and wife to the Howells, which in terms conveyed the Davis homestead, had the effect of vesting in the Howells title to the property therein described, and made such finding a basis of his conclusion and judgment in favor of appellee mortgage company against Sam Davis and John W. Howell, for the amount due upon the $2,500 note and against all of the parties, including Mrs. Sam Davis, foreclosing the trust deed covering the Davis homestead property. Upon such finding and judgment foreclosing the lien upon their homestead, appellants have assigned error, and we think the assignment must be sustained.

Mrs. Olive Davis testified, among other things, that "It is my understanding that the deeds were to be kept during the time that the title was being examined. I heard of the real estate firm of Anglin and Oakes during that time. They were to hold the deed until we got a good deed to the other place. We were to get that and get $250.00 also. That cash was never paid. I never gave my consent for my deed to be placed on record. If I had known that that $250.00 was not going to be paid, or a good title furnished to the

land, I would not have signed that deed. I would not have signed either one of them. I never got any consideration whatever for signing that·deed. I do not know Mr. Harding here. He never talked to me about it. * * * At that time I thought they were going. to make good title and was going to take the other place. I was going to take the other place. I was going to get the other place, if we had not we would have never commenced the trade."

Sam Davis testified, among other things, that "I told her (Mrs. Davis) that the deed was to be put in escrow when she signed it with Anglin and Oakes. * * * I delivered the deed to Anglin and Oakes. It was not my intention that the deed should be placed on record until I got an abstract and the cash between us."

Mrs. Howell testified, among other things, that "I handled the deal between my husband and the Davises. Mr. Davis' real estate agent put the deeds on record between Mr. Davis and us and ours to Mr. Davis. His real estate agents were Anglin and Oakes. * * * I agreed to pay them a commission on it. * * * I know why they put these deeds on record, because they had let contracts to be done on this property and had nothing to pay for it and they put the deeds on record so that the people would come to me for the money."

Neither Anglin nor Oakes, the agents, or any other person, gave testimony in contradiction of that of Mr. and Mrs. Davis, and it seems clear that the legal title to the Davis' homestead did not pass from them to the Howells.

In Houston Land & Trust Co. v. Hubbard, 37 Tex. Civ. App. 546, 85 S. W. 474, 475, by the Austin Court of ·Civil Appeals, it is declared that, "In order to render a deed effec- tive, it must be delivered into the control of the grantee, with the intent of the grantor that it shall become operative as a convey- ance. Steffian v. Bank, 69 Tex. 518, 6 S. W. 823; Link v. Page, 72 Tex. 592, 10 S. W. 699; Washburn on Real Prop. vol. 3, p. 323. A deed delivered without the consent of the grantor has no more effect to pass title than if it were a forgery, or had been ·stolen. Those claiming as innocent purchasers un- der such an instrument·can hold only by es- toppel based upon· a showing that the grantor was guilty of negligence which brought about the unauthorized delivery. Steffian v. Bank, supra; Link v. Page, supra; Hussey v. Mos- er, 70 Tex. 42, 7 S. W. 606."

The case of Cardwell v. Shifflet (Tex. Com. App.) 294 S. W. 519, 521, was one in which a Mr. Cardwell sought to recover the title and possession of certain lands described in a deed to Cardwell's grantors which had been recorded without the consent or authoriza- tion of the owner ·who had conveyed the land to them. The Commission of Appeals, in an opinion by Mr. Justice Speer, in speaking of: the effect of the recording of the deed, has. this to say: "Now, delivery is as essential to the validity and existence of a deed as is the signing or any other part of the execu- tion. The principle announced by Judge Gaines in Steffian v. Bank, 69 Tex. 518, 6 S. W. 824, has been the basis of many decisions since that time."

This court in the case of McEntire v. Thomason, 210 S. W. 563, 564, held, quoting from the headnotes, that, "In order to ren- der a deed of conveyance of land effective, it must be delivered into the control of the grantee with the intent of the grantor that it shall become operative as a conveyance."

It follows, we think, that the trial court erred in its findings and in the judgment, in ruling that the deed from Davis and wife to the Howells, which had been recorded, passed the title to the Howells, who hence were au- thorized to execute the promissory note and trust deed lien upon the Davis homestead, upon which appellee declared.

Another finding of the trial court stressed by the appellee in this case as up- holding the judgment in favor of the ap- pellee company is that under the facts the Dayises are estopped from asserting their homestead right. The declared rule, as found in section 50, article 16, of our Constitution, is that "No mortgage, trust deed, or other lien on the homestead shall ever be valid, ex- cept for the purchase money therefor, or im- provements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the home- stead involving' any condition of defeasance shall be void."

Notwithstanding this language of the Con- stitution, it has been held by our Supreme Court in a number of instances that a simu- lated lien upon the homestead acquired by a purchaser for value without notice of the simulated character of the lien may be en- forced against the homesteader. See Sanger Bros. v. Brooks, 100 S. W. 798, by the Dallas Court of Civil Appeals; Graves v. Kinney, 95 Tex. 210, 66 S. W. 293. Other cases of like effect may be found, but they all proceed on the theory, not that the lien is valid as be- tween the parties, but that in equity the in- nocent purchaser for value without notice should be protected. In the case before us, however, it is undisputed that throughout the period of the transactions involved, Sam Davis and his wife were in actual possession and occupancy of the property upon which appellant asserts its lien, and it was said, in an opinion by Gaines, Chief Justice, in the case of Collum v. Sanger Bros., 98 Tex. 162, 82 S. W. 459, 460, 83 S. W. 184, that "We think it a safe and salutary rule to require of a prospective purchaser of land to ascer-

tain whether any other be in occupancy of it; and, if there be such possession, to go to the possessor and ascertain the nature and extent of his claim. Possession is evidence of title, and, it seems to us, that common prudence and common honesty demand this course."

But it is insisted on behalf of appellee that, the deed from Davis and wife to the Howells being of record, they were not required to inquire of the Davises as to their rights or the status of the proceedings. In the case of Eylar v. Eylar, 60 Tex. 315, it was said that the sole office which possession performs in the matter of notice is to put a person desiring to purchase upon inquiry, and that it has no effect in determining what the inquiry shall be or of whom it shall be made, and further that a purchaser from a vendee whose vendor remains in possession is not bound to inquire further as to the title, when he finds on record in the county a deed from such vendor conveying title, properly proved up and registered. That to hold otherwise would be to strike at the very foundation of the policy on which registration laws rest, and that, when inquiry as to title is prosecuted to the highest source which affords evidence of the right, there is no obligation to explore inferior and less reliable channels of information, citing a number of cases.

The Eylar Case, however, has been limited several times. For instance in the later case of Moore v. Chamberlain, by our Supreme Court, reported in 109 Tex. 64, 195 S. W. 1135, it was held that possession of land by tenants of the owner who had conveyed it to another, taking a trust deed to secure purchase money, the transaction being in fact an attempted mortgage of his homestead, conveyed actual notice to a purchaser at the trustee's sale of the rights of the homestead owner and of the invalidity of the trust deed and sale. See, also, Harris v. Hamilton (Tex. Com. App.) 221 S. W. 273; Love v. Breedlove, 75 Tex. 649, 13 S. W. 222. The case of Cardwell v. Shifflet, hereinbefore cited, was a case where a possessor of land was sued by one claiming under a deed, as here, that had been placed in escrow and never in fact delivered. It was held that the actual possession of the adverse holder was sufficient to charge a purchaser and all other persons dealing with the property with notice of the rights claimed by the occupant. The opinion, which was rendered by Mr. Justice Speer, of Section B of the Commission of Appeals, after quoting that which we have quoted from the case of Collum v. Sanger Bros., 98 Tex. 162, 82 S. W. 459, 83 S. W. 184, above, relating to the duty of a prospective purchaser of land to ascertain whether any other be in occupancy of it, etc., says: "The point is not ruled by the decision in Eylar v. Eylar, 60 Tex. 315, for there was in that case a deed of conveyance, valid upon its face, actually executed and delivered by the party in possession. Here no deed was ever executed and delivered by James Brown. The instrument through which all the other parties claim is in legal effect no more than a forgery."

In the case before us it is not pretended, nor is there evidence tending to show, that Mrs. Davis expressly ratified the unauthorized record of her deed to her homestead, or in any other respect knowingly deceived the appellee company as to the status of the proceedings and her right of occupancy and ownership. It would seem therefore to be quite plain that it was the duty of the appellee company to have made the proper inquiry and to have thus ascertained the true condition of the existing circumstances and of the lawful claims of the Davises to the homestead, and it is not contended that this was done. Moreover, there is evidence, as we interpret it, tending to show that circumstances existed which at least put the appellee company upon inquiry of the rights of the Davises. While the evidence is not very specific or plain relating to the subject, we think it tends to show that the mortgage company sent the $1,300 advanced by it with which to have the improvements made on the Davis homestead to a Mr. E. P. Harding. He testified, in substance:

That he was the president of the Central Abstract Company. That "I remember the occasion of closing a loan of the National Bond & Mortgage Company for John W. Howell. In closing the loan I received the proceeds from the National Bond & Mortgage Company. * * * I handled that for the National Bond & Mortgage Company in paying off these debts. They sent us the money as represented by drafts or checks that were handed to me. When they sent that $2,467.-65, they deducted the amount of the title guarantee policy. * * * This check was made to the Central Abstract Company, because all of the business is carried on in the name of the Central Abstract Company, instead of an individual. * * * I knew where this property was. I do not remember that I was ever on it. I was not out there at the time that this work was going on. I knew it was the place where Mr. and Mrs. Davis lived. I did not know about it being a homestead. At the time that this deal was made, I would not say that I remember that there was a contract up between John W. Howell and his wife, and Davis. I knew that there was a contract up. I knew that they had a trade on. * * *

"I do not remember whether the contract was delivered to us by Howell or by Davis. The contract was delivered to the attorneys for the plaintiff here, from my office. * * * I would not say that at the time this transaction was going on between Howell and Davis that I knew about a lien against the property that Howell was trading to Davis.

I knew in a general way that they were trading places. * * *

"I would not say whether I talked with Mr. Davis or not, at the time that this loan was being perfected, with reference to moving out of that house. I do not remember it. It was my understanding that Davis was living in the house during the pendency of this loan, as a tenant. I would not say definitely whom I talked to about that matter, but it was discussed probably with Mrs. Howell and Davis, together. * * *

"This check for some $1,200.00 and odd dollars was made to the First National Bank of Wichita Falls, Texas. That check went to pay off the draft with transfer and deed of trust attached, on this property. (The transfer and deed of trust here referred to by the witness was the lien of the Continental Savings & Building Association, which was paid off during the deal). * * * I do not know whether I have ever met Mrs. Davis or not. I am quite sure that I did not talk to Mrs. Davis during this time."

J. W. Howell did not testify. His wife, Mrs. J. W. Howell, seems to have conducted the negotiations largely. She testified:

That the return deeds to the Davis homestead executed by herself and husband "were made in Mr. Harding's office, that is, we signed them. Mr. Howell and I signed the deeds in Mr. Harding's office. It was turned over to Mr. Davis, and we accepted the deed from Mr. Davis, at the same time, on the land (the suburban tract). * * * I handled the deal between my husband and the Davises. Mr. Davis' real estate agent put the deeds on record between Mr. Davis and us and ours to Mr. Davis. His real estate agency was Anglin and Oakes. I advertised my land (the suburban property) for trade for city property and they came to me. I agreed to pay them a commission on it. They were agents for both parties. I did not pay them a commission. I gave them a check with the understanding that they would not cash it until the deal was closed. I know why they put these deeds on record—because they had let contracts to be done on this property and had nothing to pay for it, and they put the deeds on record, so that the people would come to me for the money.

"Anglin and Oakes made that contract; they made the contract for these improvements out there. * * * The property I was trading had some indebtedness against it. The Empire Mortgage Company held that indebtedness. Mr. Hunter is their representative. Their mortgage covered the entire 160 acres. * * * These same agents were to refinance it and pay off the $900.00. (Which the contract between Davis and Mr. Howell recites was to be paid by the Davises)."

In the case of Irvine v. Grady, 85 Tex. 120, 19 S. W. 1028, 1029, it is said that, "As a general rule, it is universally recognized that notice to the agent is notice to the principal. Upon the proposition that knowledge which comes to an agent during the course of his employment, while effecting or assisting in the consummation of a transaction for his principal, is imputed to his principal in any suit in which that transaction may be involved, there is no conflict of authority."

And in the case of the State v. National Bank, 116 Tex. 214, 288 S. W. 435, 437, by Section A of our Commission of Appeals, the following is quoted from Cordova v. Hood, 84 U. S. (17 Wall.) 1, 8, 21 L. Ed. 587: "Wherever inquiry is a duty, the party bound to make it is affected with knowledge of all which he would have discovered had he performed the duty. Means of knowledge with the duty of using them are, in equity, equivalent to knowledge itself."

Mr. Harding appears to have been the only person representing the appellee mortgage company in intimate relation with the transaction, and we think that the circumstances certainly put him upon inquiry and affected the appellee company with notice that the trade. between the Howells and Davis as a matter of fact had not been completed. The only possible contention having a semblance of legal force as we interpret the evidence is that by the terms of the contract Davis was to assume and pay off the lien held by another on the suburban property owned by the Howells. But the primary duty of releasing the suburban property so as to furnish an abstract showing a merchantable title rested upon the Howells, and Mrs. Howell in her testimony in effect conceded they were unable to do this, and Davis' failure, whatever consequence must be attributed to him, certainly cannot be attributed to Mrs. Davis, who, so far as the testimony shows, was in no wise blamable for the failure of title, which is undisputed.

■ There is one further contention that we must dispose of. It is insisted, as the court below found and adjudged, that the homestead of the Davises was at least subject to the $1,200 trust deed lien that had been transferred by the Continental Savings & Building Association to the appellee company. But we have concluded that for the greater part at least we must overrule this contention also. It may be assumed, as we do assume, that the appellee mortgage company was subrogated by the transfer to the rights and remedies established by the trust deed lien of the Continental Savings & Building Association. The trust deed recites, however:

That the note was executed "in lieu, substitution and renewal of the amount owing

on the following described items of indebtedness, to wit:

"(1) One promissory note dated August 27, 1926, executed by us, in the sum of $1,000.00, payable to the order of Continental Savings & Building Association in the manner provided in deed of trust of even date therewith given by us to Ralph A. Beaton, Trustee, of record in Vol. 72, page 320, of the Deed of Trust Records of Wichita County, Texas; on said $1,000.00 note there is now owing $1,000.00 principal, and $26.28 accrued interest.

"(2) One promissory note dated November 2, 1926, executed by us, in the sum of $112.00 payable to order of Lone Star Lumber Company, due on or before January 12, 1927, and described in mechanic's lien of even date therewith given by us to said Lone Star Lumber Company; * * * on said $112.00 note there is now owing $99.09 principal, and no accrued interest;

"(3) The sum of $74.63 has been advanced in payment of certain taxes owing on the property above described. * * *

"All of said taxes have been duly and legally levied and assessed, and the same are all now due. * * *

"Said Continental Savings & Building Association, at our special instance and request, has advanced the sum of $1200 to take up the items of indebtedness immediately above described; by reason of said advancement, said Association is subrogated to all of the rights, equities, liens and remedies of the holders of said items of indebtedness and each thereof:—all of which liens are hereby expressly continued in full force and effect to secure payment of the $1200 note first herein described."

As shown in the statement of facts, the acknowledgment to this instrument reads as follows:

"County of Wichita ⎱
"The State of Texas ⎰

"Acknowledged on 29th day of November, 1926, before Louis A. Robinson, Notary Public in and for Wichita County, Texas."

The name of the officer taking the acknowledgment is not signed thereto.

The note and trust deed above mentioned was assigned to the appellee bond and mortgage company on the 22d day of August, 1928. The assignment recites that it was "without recourse, without representations, and without warranties, express or implied."

Section 50 of article 16 of the Constitution provides: "The homestead of a family shall be, and is hereby, protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead. * * *"

The evidence wholly fails to show that the note dated August 27, 1926, in the sum of $1,000, payable to the Continental Savings & Building Association, which was substituted or renewed by the trust deed under consideration, was given for the purchase money or any part of the purchase money upon the lots occupied by the Davises as a homestead. Nor does the evidence show or tend to show that the promissory note dated November 2, 1926, for the sum of $112, and secured by the mechanic's lien, also substituted by the trust deed under consideration, was secured by a mechanic's lien "contracted for in writing, with the consent of the wife given in the same manner as required in making a sale and conveyance of the homestead," or that, if a mechanic's lien, it had been duly fixed as required by the statutes. In other words, we are unable to say from the evidence that, by the transfers to the appellee company, it, by subrogation or otherwise, obtained an enforceable lien against the homestead involved to secure the payment of the notes for $1,000 and for $112 specified in the trust deed. And, to the extent therefore that the trial court found and adjudged otherwise, we think he was in error.

We have, however, concluded that the undenied recitations in the trust deed under consideration, which appears to have been duly signed by Davis and wife, although not acknowledged, may be considered as evidence establishing the fact recited in the trust deed that the sum of $74.63 had been advanced and paid by the appellee company for taxes due on the property, and that hence to this extent, and to this extent only, the appellee company was entitled to a recovery of such sums so advanced in the payment of taxes with lawful interest thereon, and that to secure the same the tax lien provided by the laws should be enforced as against the homestead of the Davises.

There is no complaint of the judgment in favor of the appellee company against Sam Davis and J. W. Howell in person, and the judgment below therefore in that respect will not be disturbed. But the judgment below in favor of the appellee fixing a lien upon the Davis homestead property for all that part of the $1,200 note described in the trust deed under consideration other than for the sum of $64.63 taxes stated, is reversed and here rendered in favor of the appellant. For the said taxes, however, judgment will here be rendered in favor of the appellee for said sum of $74.63 and interest, to secure which a lien on said homestead is hereby fixed and foreclosed. It is further ordered that all

costs of the litigation be paid by the appellee.

### On Appellee's Motion for Rehearing.

■ The contention that we erred in failing to dismiss the appeal in this case because the affidavit of inability to pay costs or give security therefor failed to sufficiently describe the judgment, is overruled. In addition to the reasons upon which we based our action as stated in our original opinion, appellant in a reply motion calls our attention to the amendment of article 2266, Rev. Civ. Statutes, passed by the 42d Legislature and effective August 23, 1931 (see Gen. Laws 42d Leg. Gen. Session, c. 134, p. 226 [Vernon's Ann. Civ. St. art. 2266]), which we think fortifies the conclusion originally reached by us.

■ We think appellee misplaces the burden of proof in the contention that we erred in disregarding the findings of the trial court to the effect that the note and deed of trust for $1,200 transferred from the Continental Savings & Building Association was a valid lien against the home of the Davises. It is contended, in substance, that the trust deed constituted prima facie proof of its validity, and that appellant presented no evidence that the items of indebtedness thus secured were not such as would support the lien on the homestead. It is to be observed, however, that appellee in its petition set forth this trust deed which on its face covered the described lots. To appellee's prayer for the enforcement of this lien against the lots, appellants defended on the ground that the lots at all times involved constituted their homestead, and, when the plea and supporting proof was presented by them, appellee's prima facie proof was overcome and the burden shifted to it to establish that the indebtedness secured by the deed of trust was such as under our Constitution and laws would support the lien on the homestead. In addition to this, examination of the items of indebtedness secured by this trust deed will disclose that the principal part thereof at least was based upon a purchase of capital stock in the Continental Savings & Building Association and not for a part of the purchase money of the lots in question or for improvements thereon.

■ It is also vigorously contended that the case should be reversed and remanded to enable appellee to prove the character of the items of indebtedness secured by the trust deed for $1,200. Article 1856, Revised Civil Statutes 1925, provides that, "When the judgment or decree of the court below shall be reversed, the court shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial."

This article and numerous cases are reviewed by our Supreme Court in the case of Sovereign Camp, W. O. W., v. Patton, 117 Tex. 1, 295 S. W. 913, 915, and it is there said:

"Broadly speaking, excluding cases in which the appellate court could not properly render judgment for lack of a finding of fact in the trial court, they were cases where the appellees, because of some excusable misapprehension of the law or facts or some ruling or disposition made of the case by the trial court, failed or were not permitted to present all of their grounds of recovery or of defense or to support the same by some evidence which the record showed to have been available, or probably so. In other words, they were cases which the record showed had excusably been not fully developed, and in which the appellees had not availed themselves of all of the rights and remedies which would be open to them in the event of a new trial. By way of illustration, this condition of the record would appear in a case where the Court of Civil Appeals reverses a judgment on the ground that the pleading of appellee was not sufficient on an issue which he could have properly pleaded; in a case where secondary evidence was held to have been erroneously admitted, when primary evidence was available; and in a case where the judgment was reversed because of error in holding the evidence of appellant not sufficient to raise an issue which might have been met by the appellee, but was not because of the ruling of the trial court. In each of these instances it will be seen that the cases were not fully developed, and a judgment of the appellate court would have worked a hardship upon appellee and denied him a right or remedy of which he could, and would naturally, have availed himself but for the error of the trial court. Chapman v. Witt (Tex. Civ. App.) 285 S. W. 331.

"It is to these classes of cases that the rule growing out of the statutory exception and set out in the opinion of Justice Speer [Associated Oil Co. v. Park (Tex. Com. App.) 277 S. W. 1043], above quoted, applies. This rule should have no application to a case where the issues have been properly pleaded, have been reasonably well developed by the evidence, and then clearly submitted to a jury, with a verdict rendered in favor of appellant on the controlling issue in the case, and where the record fails to show that the appellee took any exception to, or filed any cross-assignment of error on, any part of the proceedings in the trial court. Under such circumstances the trial court, as well as the parties, is bound by the verdict of the jury, unless and until same is set aside on proper grounds; and, if judgment is not rendered by the trial court in accordance

with the verdict, it is the duty of the Court of Civil Appeals to render the judgment which should have been rendered below."

Upon the same subject, in speaking of the divergence of opinion arising from a construction of article 1856, it is said in Texas Jurisprudence, vol. 3, page 1217, § 862, that, "Moreover, upon a closer reading of the cases wherein it is said that the case must be remanded in furtherance of justice it is seen that the determining factors requiring a remand are that the appellee has either been prevented from fully developing his case in the trial court, or has excusably omitted to do so, as a result of an erroneous decision of the trial court. In short, it seems that the inference to the requirements of justice is a mode of pointing to the rule really applied, viz., that a remand is called for where the case is undeveloped without any fault on the part of appellee."

In the case now under consideration, it is to be noted that, as already stated, appellee in its petition set forth the $1,200 trust deed lien with a prayer in the alternative for a foreclosure. This prayer was met by appellants' plea of homestead, later supported by undisputed evidence. The record fails to show that either by pleading or offered proof did appellee attempt to establish the character of indebtedness secured by this trust deed, nor was any suggestion made to the court at the time that there was evidence available to support a claim that the items of indebtedness so secured were such as might form the foundation of a lien on the homestead, and nothing in the record that we have been able to find indicates that, should the case be reversed, any such proof can be offered. On the contrary, an examination of the statement of facts shows that the $1,200 consisted of $1,000 for the purchase of capital stock in the Continental Savings & Building Association, and there is nothing to indicate that the item referred to as the mechanic's lien had a basis which would entitle appellee to foreclose a lien on the homestead. We understand it to be our duty, under article 1856, Rev. Civ. Statutes, as construed in the case of Sovereign Camp, W. O. W., v. Patton, supra, to reverse and here render this case under the circumstances shown, rather than to reverse and remand and thus impose delay and costs to both the public and litigants merely to enable appellee to plead and produce evidence, if any it has, that it was given an opportunity to produce upon the trial and no excuse given why it was not offered.

In the case of Maverick v. Routh, 7 Tex. Civ. App. 669, 23 S. W. 596, the San Antonio Court of Civil Appeals had this to say: "Cases are tried by inferior courts with a view to this statute, and with full knowledge on the part of litigants that, if the judgment rendered should be reversed on appeal, it is the plain and unequivocal duty of this court to render the proper judgment, without the case should fall within the exception. Under this statute, the parties to a suit, as the result of the trial, have the right to a proper judgment; and the party who was entitled to it in the court below cannot be deprived of it by its failure to do its duty, but can demand the right on appeal, and cannot then be deprived of it by a confession of error on the part of his apparently successful adversary, without the court's passing on the merits of the case."

In the same case, reported in 7 Tex. Civ. App. 669, 26 S. W. 1008, the court, quoting from the headnotes, further said: "Under Acts 1892, p. 31, § 36, providing that, on reversal of a judgment, the court of civil appeals shall render such judgment as the trial court should have rendered except when it is necessary that some matter of fact be ascertained, or the damages to be assessed or the matter to be decreed is uncertain, the case should not be remanded merely because the successful party in the trial court failed to introduce sufficient testimony to justify the judgment."

In Standard Paint Co. v. San Antonio Hardware Co., 136 S. W. 1150, 1151, it is further said by the same court, quoting from the headnotes, that "Where plaintiff declared on an express contract and relied on a custom. but did not make sufficient proof of the custom although he had opportunity to make proof if he had any, there is no necessity for a new trial, and the judgment for plaintiff may be reversed and judgment rendered that plaintiff take nothing."

We conclude that appellee's motion for rehearing and to remand the cause should be overruled.