## NATIONAL BOND & MORTGAGE CORPO-RATION v. DAVIS et al.
### No. 1673—6155.

Commission of Appeals of Texas, Section A.
May 26, 1933.

Karsten & Lopp, of Fort Worth, for plaintiff in error.

P. B. Cox, of Wichita Falls, for defendants in error.

SHARP, Judge.

This suit was instituted by the National Bond & Mortgage Corporation against Sam Davis and wife, Olive Davis, and John Howell and wife, Minnie Howell, to recover upon a promissory note for $2,500 and to foreclose the lien securing the same by deed of trust upon lot 2 in block 20 West Side addition to Floral Heights addition in the city of Wichita Falls. The trial was before the court without a jury, and a judgment was rendered in favor of the plaintiff against Sam Davis and John W. Howell personally and foreclosing the lien upon the property above described as against Mrs. Olive Davis. The Howells have not appealed from the judgment. The Court of Civil Appeals at Fort Worth reversed and rendered the cause. 45 S.W.(2d) 272. The Supreme Court granted a writ of error.

Plaintiff in error contends that the Court of Civil Appeals erred in disregarding and overruling the findings of the trial court that the note and deed of trust for $2,500 held by the National Bond & Mortgage Corporation was a valid lien against the property claimed

by Sam Davis and wife, because such findings are fully supported by the evidence. If this contention is sustained, the other questions presented become immaterial.

The trial court made exhaustive findings of fact and conclusions of law covering the issues raised by the pleadings and the evidence, and as pertinent to the contention urged here we state the effect of the material findings:

### Findings of Fact.

(1) That .Sam Davis and wife executed their one certain promissory note in the amount of $1,200 with interest from date at the rate of 10 per cent. per annum and due and payable to the order of Continental Savings & Building Association in monthly installments according to its plan.

(2) That Sam Davis and wife, to secure the payment of the above-mentioned note, executed one certain first deed of trust dated November 26, 1926, to Ralph A. Beaton, trustee, Continental Savings & Building Association, beneficiary, and that the deed of trust was given in renewal and extension of prior existing valid liens against the property described in the deed of trust, and that the deed of trust was a valid and first existing deed of trust lien against lot 2 known as the "Garfield Street Property."

(3) That for a valuable consideration paid by the National Bond & Mortgage Corporation to the Continental Savings & Building Association it transferred, assigned, and delivered to the National Bond & Mortgage Corporation the note and deed of trust lien above described.

(4) That Sam Davis and John W. Howell entered into a written contract dated April 18, 1928, whereby Davis and Wife were to sell and convey lot 2 known as "2102 Garfield Street Property" to John W. Howell, upon which, according to the contract, there was an indebtedness of approximately $1,400 which was assumed by John W. Howell, and that a new loan was to be made on the property by Howell, and that Anglin & Oakes were to look after same.

(5) That Howell was to sell and convey to Davis 20 acres of land, more or less, near the city of Wichita Falls known as the "Suburban Property," by the terms of the contract Sam Davis was to assume the indebtedness against the property.

(6) That in pursuance of the contract Davis and wife executed a warranty deed to John W. Howell dated May 9, 1928, conveying lot 2, above described, whereby Howell assumed to pay the indebtedness against the property.

(7) That Howell and wife by their certain deed acknowledged the 12th day of May, 1928, conveyed to Sam Davis the 20 acres of land known as the "Suburban Property," by the

terms of which Sam Davis assumed to pay the indebtedness against the property.

(8) That both deeds were placed in escrow with Anglin & Oakes, who were the agents for Sam Davis and wife.

(9) That said deeds were caused to be placed of record by Anglin & Oakes, the agents of Sam Davis and wife, in order that a new loan might be made by John W. Howell and wife upon the Garfield Street Property according to the terms of the contract.

(10) That John W. Howell and wife executed and delivered their two certain promissory notes dated May 24, 1928, to Van Lumber Company, one for $1,100 due ninety days after date, and the other for $250 due on or before one year from date, respectively, which were secured by a mechanic's lien contract dated May 24, 1928, executed by Howell and wife to Van Lumber Company and covering the Garfield Street Property; that the notes and liens were given for certain improvements which were made upon the property.

(11) That Davis and wife remained on the property pending the completion of the improvements thereon, and that Sam Davis performed labor and received the sum of $175.03 for his services.

(12) That Davis had a discussion with Mr. Hunter, who held the lien upon the tract of land known as the Suburban Property which had been conveyed to him by Howell and wife, and which discussion was had prior to July 11, 1928, wherein Hunter informed Sam Davis that he had already instituted foreclosure proceedings to foreclose his lien upon the Suburban Property.

(13) That Sam Davis did not make a new loan upon the Suburban Property and did not pay nor make any effort to pay the indebtedness and lien against same according to the terms of his contract of sale and deed.

(14) That Hunter obtained a judgment of foreclosure of his lien upon the Suburban Property on the 11th day of July, 1928.

(15) That Davis and wife executed another warranty deed dated July 16, 1928, conveying to John Howell the property known as the Garfield Street Property; which deed was duly recorded.

(16) That the title to the Suburban Property did not fail, but that it was through the default of Davis in not paying the indebtedness as he agreed to do that the foreclosure was had thereon.

(17) That there was a valid consideration to support both of the deeds above mentioned from Sam Davis and wife to John W. Howell conveying the Garfield Street Property.

(18) That Van Lumber Company, by its assignment dated August 15, 1928, for a valuable consideration paid by the National Bond & Mortgage Corporation transferred, assign-

ed, and delivered to the corporation a mechanic's lien contract and notes above mentioned covering the Garfield Street Property, and that corporation became the legal and equitable holder and owner of said notes and liens.

(19) That the Continental Savings & Building Association for a valuable consideration transferred, assigned, and delivered to the National Bond & Mortgage Corporation the deed of trust lien above mentioned by written assignment dated August 22, 1928, whereby the National Bond & Mortgage Corporation became the legal equitable holder and owner of the lien and indebtedness covering the Garfield Street Property.

(20) That John W. Howell and wife executed their certain promissory note No. 1, dated August 15, 1928, in the amount of $2,500 with 6 per cent. interest per annum from date and due and payable to the order of National Bond & Mortgage Corporation in monthly installments according to its plan, which note provided for 10 per cent. attorney's fee in case of default, etc.

(21) That Howell and wife, to secure the payment of said $2,500 note, executed and delivered their certain deed of trust, dated August 15, 1928, to J. Lewis Thompson, Jr., trustee, National Bond & Mortgage Corporation, beneficiary, against the Garfield Street Property.

(22) That the note and deed of trust executed by Howell and wife aforesaid were given in renewal and extension of the above-mentioned deed of trust lien executed by Davis and wife to Ralph A. Beaton, trustee, Continental Savings & Building Association, beneficiary, and also were given in renewal and extension of the mechanic's lien notes and contract executed by Howell and wife to Van Lumber Company above described, and that said deed of trust lien constituted a valid existing first deed of trust lien against the Garfield Street Property in favor of the National Bond & Mortgage Corporation.

(23) That the National Bond & Mortgage Corporation is entitled to be subrogated to the rights of all prior lienholders.

(24) That the Central Abstract Company of Wichita Falls attended to the closing of the loan made by the National Bond & Mortgage Corporation upon the Garfield Street Property, and that same was finally closed the latter part of August, 1928.

(25) That after the completion of the improvements made upon the Garfield Street Property in accordance with the terms of the mechanic's lien contract, Sam Davis was in constant communication with the Central Abstract Company and was urging that company to rush the closing of the loan by the National Bond & Mortgage Corporation as fast as possible.

(26) That Davis and wife knew that Howell and wife were procuring a loan from the National Bond & Mortgage Corporation upon the Garfield Street Property to take up, renew, and extend all of the prior liens upon said property, and that they agreed, acquiesced, and requested that the National Bond & Mortgage Corporation renew and extend the deed of trust lien in favor of the Continental Savings & Building Association and all liens securing same, together with the mechanic's lien in favor of Van Lumber Company.

(27) That Sam Davis at the time he received the sum of $175.03 knew that said amount was being paid out of the proceeds of the loan made by the company in accordance with the terms of the aforesaid mechanic's lien contract.

(28) That Howell and wife executed their warranty deed dated September 4, 1928, to Sam Davis wherein they conveyed to Sam Davis the Garfield Street Property; the consideration in said deed among others being the assumption by Sam Davis of the indebtedness in favor of the National Bond & Mortgage Corporation, that the deed to Davis covering the Garfield Street Property was delivered to him in person at the office of the Central Abstract Company and that Davis and wife executed and delivered to Howell their deed conveying the Suburban Property, but that Howell never placed same of record because he knew same had been foreclosed.

(29) That the deed was returned after being duly recorded to John W. Howell and that Davis called at the residence of Howell in Iowa Park and received the deed which covered the Garfield Street Property.

(30) That after receiving said deed Davis did on or about the 13th day of September, 1928, pay the plaintiff the sum of $22.05 to apply upon the installment maturing September 15, 1928, upon the note and lien held by the National Bond & Mortgage Corporation, and that Davis did make another payment to the corporation on or about the 23d day of October, 1928, to cover the installment maturing October 15, 1928, upon the note and lien in favor of the corporation upon the Garfield Street Property.

(31) That the amount due the corporation is the sum of $3,070.80, together with interest thereon at the rate of 6 per cent. per annum from the 28th day of November, 1930, and that the corporation is entitled to recover that amount jointly and severally against Howell and Davis, together with the foreclosure of its deed of trust lien upon the Garfield Street Property, and that the corporation is entitled to the title and possession of said property as against all the defendants in said suit.

(32) That Davis and wife have never at any time vacated the Garfield Street Property and that they are still living upon said property.

## Conclusions of Law.

1. That as a matter of law the deed of trust lien and note executed by Davis and wife on November 26, 1926, in favor of the Continental Savings & Building Association were given in renewal and extension of prior valid liens upon the Garfield Street Property and that same constituted a valid lien against that property.

2. That there was a valid consideration supporting the deed dated May 9, 1928, from Davis and wife conveying the Garfield Street Property to John W. Howell, and that title thereto passed to John W. Howell and wife by virtue of said deed.

3. That there was a valid consideration supporting the deed dated July 16, 1928, from Davis and wife conveying the Garfield Street Property, and that title thereto passed to Howell by virtue of the deed.

4. That Davis and wife, Olive Davis, were estopped from asserting any homestead rights to the Garfield Street Property superior to that of the National Bond & Mortgage Corporation, and that Davis and wife are not entitled to recover anything by reason of their answer and defense in this cause.

5. That the title to the Suburban Property conveyed to Davis by Howell and wife by deed acknowledged May 12, 1928, did pass to Davis, and that there was a valid consideration supporting same, and that Davis assumed to pay the indebtedness against the property.

6. That the foreclosure upon the Suburban Property was caused by the failure of Davis to discharge the existing indebtedness against same or to obtain a new loan and thereby have the same renewed and extended.

7. That Howell and wife were not obligated to Sam Davis to pay off the indebtedness against the Suburban Property.

8. That the notes and mechanic's lien contract dated May 24, 1928, executed by Howell and wife to Van Lumber Company, constituted a valid existing lien against the Garfield Street Property.

9. That the National Bond & Mortgage Corporation became the legal and equitable holder and owner of the notes, indebtedness, and liens in favor of both Continental Savings & Building Association and Van Lumber Company upon the Garfield Street Property, and that the corporation is subrogated to all the rights, titles, interests, and remedies of both the Continental Savings & Building Association and Van Lumber Company, notes, indebtedness, and liens upon the Garfield Street Property.

10. That the note and deed of trust lien dated August 15, 1928, executed by Howell and wife in favor of the National Bond & Mortgage Corporation upon the Garfield Street Property, were given in renewal and extension of the notes, indebtedness, and liens in favor of the Continental Savings & Building Association and Van Lumber Company and constituted a valid and subsisting first deed of trust lien against that property.

In the light of the foregoing statements, the holding of the Court of Civil Appeals is contrary to the decisions announced by our Supreme Court in many cases. Unless it can be said, as a matter of law, that there was no evidence of probative force to sustain the findings of the trial court, the Court of Civil Appeals is not justified in reversing and rendering a cause. It can only become a question of law when the facts and circumstances are such that but only one reasonable conclusion can be drawn therefrom. Galveston, H. & S. A. Ry. Co. v. American Grocery Co., (Tex. Sup.) 36 S.W.(2d) 985, 990, and cases cited therein. In the case just cited it was held: "If the Court of Civil Appeals undertook to substitute its findings of fact for the findings of fact made by the trial court and render final judgment thereon, it would not be authorized to do so, if there was any evidence in the record to sustain the finding made by the trial court. Patrick v. Smith, 90 Tex. 267, 38 S. W. 17; H. & T. C. Ry. Co. v. Strycharski, 92 Tex. 1, 37 S. W. 415; Choate v. S. A. & A. P. Ry. Co., 91 Tex. 406, 44 S. W. 69."

However, as we construe the opinion of the Court of Civil Appeals, that court does not undertake to substitute its findings of fact for the findings of the trial court, but merely construed the legal effect of the evidence considered as a whole and held, as a matter of law, that lot 2, known as the Garfield Street Property, was the homestead of Sam Davis and wife during the transactions under consideration and that the alleged liens undertaken to be placed thereon were void and therefore reversed and rendered the cause. Such a holding gives the Supreme Court authority to review the evidence. G., H. & S. A. Ry. Co. v. American Grocery Co. (Tex. Sup.) 36 S.W.(2d) 985; Marshburn v. Stewart, 113 Tex. 518, 254 S. W. 942, 260 S. W. 565; Tweed v. Western Union Tel. Co., 107 Tex. 247, 166 S. W. 696, 177 S. W. 957; Beck v. Texas Co., 105 Tex. 303, 148 S. W. 295.

It is urged by Davis and wife that they occupied the lot above mentioned as their homestead at all times during the transactions under consideration, and that if plaintiff in error had made inquiry it would have been ascertained that Davis and wife had never moved off the lot but had continued to occupy it. The deed executed by Davis and wife to Howell was duly recorded, and plaintiff in error contends that the deed being of record it was not required to inquire of the Davises as to their rights by reason of their occupancy of the premises. Unless this case is brought under exceptions, which we will hereinafter discuss, the rule announced in the case of Eylar v. Eylar, 60 Tex. 315, will

control. It was held in that historical case that the sole office which possession performs in the matter of notice is to put a person desiring to purchase upon inquiry and that it has no effect in determining what the inquiry shall be or of whom it shall be made, and that a purchaser from a vendee whose vendor remains in possession is not bound to inquire further as to the title when he finds on record in the county a deed from such vendor conveying title properly executed and registered. To hold otherwise would be to strike at the very foundation of the policy on which registration laws rest. When inquiry as to title is prosecuted to the highest source which affords evidence of the right, there is no obligation to explore inferior and less reliable channels of information.

The Eylar Case was decided in 1883 and has become a rule of property. While confined to the particular facts in that case, the rule has been and is now adhered to by the courts of this state. Judge Williams, in the case of Ramirez v. Smith, 94 Tex. 184, 59 S. W. 258, 260, reaffirmed the rule in the following language: "There are cases which, while recognizing the proposition that possession is sufficient to excite inquiry, hold that where the possessor has done something, such as making a deed to another, which is of record, which furnishes a sufficient answer to the inquiry arising, the possession does not impose the duty of further investigation. Eylar v. Eylar, 60 Tex. 318; Hurt v. Cooper, 63 Tex. 365; Heidenheimer v. Stewart, 65 Tex. 323; Love v. Breedlove, 75 Tex. 652, 13 S. W. 222; Alstin v. Cundiff, 52 Tex. 465; Ranney v. Miller, 51 Tex. 263. Some of these cases proceed, also, on the doctrine of estoppel."

A different rule prevails where possession of the property is held by tenants of the owner. In such case possession by the tenants puts the purchaser upon inquiry which he must prosecute with reasonable diligence. Ramirez v. Smith, supra; Collum v. Sanger Bros., 98 Tex. 162, 82 S. W. 459, 83 S. W. 184; Moore v. Chamberlain, 109 Tex. 64, 195 S. W. 1135. Nor does the rule apply where a possessor of land has two claims to it, one of record and the other not. The possession is not notice of the unrecorded title, and where the owner holds possession, by reason of the unrecorded title, it is the duty of the purchaser to inquire of him as to such title. Ramirez v. Smith, supra; Collum v. Sanger Bros., supra. The facts in this case are similar to the facts in the Eylar Case and the two rules just stated do not apply here.

 But it is contended by Davis and wife that the first deed executed by them to Howell was filed for record by the land agents without their consent, and that it did not become effective as a conveyance. The decisions hold that the delivery of a deed is requisite to its validity as a conveyance and to become effective it is as necessary that it should be delivered as it is that it should be signed; that to complete a delivery of a deed it must not only be placed within the control of the grantee, but this must be done by the grantor with the intention that it should become effective as a conveyance. Steffian v. Bank, 69 Tex. 513, 6 S. W. 823; Link v. Page, 72 Tex. 592, 10 S. W. 699.

No contention is made that the improvements were not constructed on lot 2 in accordance with the terms of the contract or that the amounts described in the notes given for such improvements and other indebtedness are excessive or fraudulent in any manner whatsoever, or that there was any bad faith on the part of the corporation in acquiring the notes and liens. It is shown by the findings of the trial court that Davis and Howell executed their contract on April 18, 1928; that in pursuance of this contract Davis and wife executed their deed to Howell dated May 9, 1928, and that Howell and wife executed their deed to Davis on May 12, 1928; that the deeds were placed upon record by Anglin & Oakes, agents of Davis and wife, in order that a new loan might be made by Howell and wife upon lot 2 according to the terms of the contract. It is also shown that Howell and wife executed their two notes dated May 24, 1928, one for $1,100 and the other for $250, to the Van Lumber Company, which were secured by mechanic's lien contract dated May 24, 1928, on lot 2 for certain improvements made thereon; that Davis performed labor on the improvements and received $175.03 for services; that Davis and wife executed a warranty deed dated July 16, 1928, to Howell conveying lot 2 which was duly recorded; that the title to the Suburban Property conveyed by Howell and wife to Davis did not fail but was foreclosed through the default of Davis in not making the payments as he had agreed to do. Furthermore, that the Van Lumber Company and the Continental Savings & Building Association transferred their notes and liens to the National Bond & Mortgage Corporation, and on August 15, 1928, Howell and wife executed their note for $2,500 to that corporation and gave a deed of trust lien on lot 2 to secure the payment thereof; that the $2,500 note and deed of trust were given in renewal and extension of the notes and liens held by the Van Lumber Company and the Continental Savings & Building Association. The findings of the trial court also show that Davis and wife knew that Howell and wife were procuring a loan from the National Bond & Mortgage Corporation upon lot 2 to take up, renew, and extend all the prior liens thereon and that they agreed, acquiesced, and requested that corporation to renew and extend same; that Davis knew the $175.03 paid him came out of the proceeds of that loan.

The evidence shows that Davis was delinquent in his payments to the Continental Sav-

434

ings & Building Association and by the terms of the contract it was stipulated that a new loan would be placed by Howell on lot 2 to pay the difference in the value of the properties to be exchanged; that Anglin & Oakes, the agents, were to handle the matter, and in pursuance of this contract Davis and wife executed their deed conveying lot 2 to Howell and delivered same to Anglin & Oakes. It logically follows that if Howell was to place a new loan on this lot for this purpose, it was contemplated and intended by the parties that the deed would be recorded.

The record is undisputed that Howell and wife executed their warranty deed dated September 4, 1928, to Davis conveying to him lot 2, the consideration, among other things expressed therein, being the assumption of the debts in favor of the National Bond & Mortgage Corporation, and that Davis made two payments thereafter to the corporation. Upon this state of the record, the trial court found that Davis and wife were estopped from asserting any homestead rights in lot 2 superior to the claims of the National Bond & Mortgage Corporation.

If it be conceded that the deed from Davis and wife to Howell was left with Anglin & Oakes not to be recorded until the performance of the agreement between Dayis and Howell, that fact does not foreclose the question that the National Bond & Mortgage Corporation is not entitled to a foreclosure of its lien, although no effective delivery of the deed is shown, if Davis and wife are estopped by their acts and conduct. In the case of Boswell et al. v. Pannell, 107 Tex. 433, 180 S. W. 593, 597, it is said: "But it has been held by this court in the case of Link v. Page, 72 Tex. 596, 10 S. W. 699, that: '* * * Where the owner of real property negligently clothes another with the apparent title to it, although the execution of the instrument which purports to convey the title may be obtained by fraud, and third parties, being misled thereby, innocently purchase and pay value for the property, he should be held estopped to deny the validity of the conveyance.' See, also, Steffian v. Bank, 69 Tex. 513, 6 S. W. 823; Tyler B. & Loan Association v. Beard & Scales, 106 Tex. 554, 171 S. W. 1122, 1200."

Judge Brown, in discussing this precise question in the case of Tyler B. & Loan Association v. Beard & Scales, supra, said:

"In fact, it is immaterial whether the deed was in escrow, or whether it was a deed delivered to the agent without any concurrent agreement on the part of the vendee, and to be by the agent delivered at his own discretion upon the completion of the transaction between him and the proposed vendee.

"If it was a deed which the owner of the land executed and delivered to his agent, to be delivered to the vendee upon the performance of the agreement between them, and the agent delivered it fraudulently, as alleged in the petition, still, when the land had been sold to an innocent purchaser, as it was in this case, and, as alleged in the petition, the purchase was for valuable consideration without notice, title would pass notwithstanding the fraud. If the deed had been strictly in escrow, deposited with the parties by agreement, and the depositary had delivered it by a fraudulent agreement between himself and the vendees in the deed, the innocent purchaser for value and without notice of any such conditions would take the title free from the claim of the vendor. 16 Cyc. 582, note 34."

█ This record bears out the conclusions made by the trial court that Davis and wife knew that the deed had been placed on record and that Howell was claiming title under the terms of the deed and was executing liens against the property as disclosed by the findings of the trial court. The courts of this state zealously guard homestead rights guaranteed under the Constitution and laws and will not permit those rights to be invaded by others seeking to establish invalid claims or liens against the property claimed as a homestead, but in upholding the provisions of the Constitution and the laws the courts have also kept in mind that it was never intended by the framers of the Constitution that the homestead law should be used to defeat the rights of an innocent third party, who, in good faith, without notice, for a valuable consideration, has acquired valid liens against the property. Heidenheimer Bros. v. Stewart, 65 Tex. 321; Pickett v. Dallas Trust & Savings Bank (Tex. Com. App.) 24 S.W.(2d) 354; Graves v. Kinney, 95 Tex. 210, 66 S. W. 293.

█ In the case of Heidenheimer Bros. v. Stewart, supra, is announced the following well-established rule: "The equities between the original parties to a mortgage cannot avail a mortgagor in a suit on the secured negotiable note to foreclose the mortgage (Jones on Mortgages, sec. 834; Hilliard on Mortgages, 572), even if it results in the encumbrance of the homestead, if those entitled to the exemption have caused this result by their own deliberate fraud. Hurt v. Cooper, 63 Tex. 362. If the owners of the homestead simulate a transaction, in which a negotiable note would be secured by a valid and meritorious lien on the exempt estate, and their artifice succeeds in imposing upon an innocent party, they are estopped from denying the truth of their solemn statements, and cannot be permitted to prove that a lien their acts declared to be valid is void because their acts were false." The foregoing rule has been repeatedly upheld by the courts of this state, and when the facts justify it the rule will be applied and enforced.

█ If Davis and wife, by their acts and conduct, led the National Bond & Mort-

gage Corporation to believe that Howell owned lot 2 and that a valid lien existed thereon to secure the payment of the notes acquired in good faith, without notice, for a valuable consideration, by that corporation, they are now estopped to deny the validity of the lien. The issue of estoppel was raised by the pleadings and the evidence, and the trial court found this issue against Davis and wife and further found that the National Bond & Mortgage Corporation was entitled to a judgment foreclosing its lien on the property. The trial court having made comprehensive findings of fact and rendered judgment thereon in favor of the National Bond & Mortgage Corporation, it is the duty of the appellate court to construe these findings of fact in a most favorable light, so that the facts found will harmonize with the judgment rendered as well as with the law.

We have carefully considered this record and find that there was evidence to support the judgment. In view of the findings of the trial court, the Court of Civil Appeals erred in holding, as a matter of law, that the National Bond & Mortgage Corporation was not entitled to a judgment foreclosing its lien against lot 2 and in reversing and rendering same as was done. Therefore we recommend that the judgment of the Court of Civil Appeals be reversed and that the judgment of the trial court be in all respects affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.